325 So.2d 205

**M. B. SASHINGTON**

v.

**STATE.**

**I Div. 602.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Rehearing Denied Nov. 4, 1975.

S. J. Laurie, Chatom, for appellant.

William J. Baxley, Atty. Gen., and William A. Davis, Asst. Atty. Gen., for the State.

CLARK, Supernumerary Circuit Judge.

Appellant was tried on an indictment charging murder in the first degree, convicted of murder in the second degree and sentenced to imprisonment for thirty years.

The deceased was Ollie Williams, affectionately known as "Coon" and endearingly addressed by the younger set as "Uncle Coon." He was celebrating his threescore and fifth birthday the night he was killed. It was a well attended party at his home, somewhat of a "come-and-go" but more of a "come-and-stay" or a "come-and-go-and-come-back" affair. It commenced about sundown and was suddenly broken up at about the stroke of midnight by the single blast of· a shotgun that fatally felled the honored host. Defendant, who lived next door (about 150 yards away) in a trailer, was there. He undoubtedly was included in the guest list; he lived with his ·brother on the property of deceased. The evidence clearly shows that defendant and deceased were friends, that there had been no previous trouble between them. Defendant came to the party twice, the second time with his single-barrel shotgun that on his first appearance he had left at his trailer. He had been wont to limit his use of the shotgun to shooting squirrels and turkeys.

There were copious refreshments variously provided. Uniformity is lacking in the evidence as to any general question of intoxication of the celebrants, some witnesses indicating that there may have been a beer or so, others that many were "tight." Some fights or "fusses" had occurred in the house or on the porch; one of which had commenced in the presence of defendant only a short while before defendant went to his trailer to get his gun. Defendant's brother and father were involved to some extent. One of such "fusses" had started in the house, but apparently it had moved therefrom to the door of the front porch about the time defendant arrived in the front yard with his gun. In some way deceased had allowed himself to get involved, perhaps as a peacemaker, and had come through the front door of the house onto the porch with some of the others. Almost every person at the party that testified, about fifteen, heard the shot—one shot only. Several testified, and defendant admitted in his testimony, that his shotgun was fired, that he was standing at the bottom of the front steps, with the muzzle of the gun pointed in the direction of the front porch where deceased and others were at the time. Almost all the witnesses who observed him at the time corroborate his own testimony that the gun was not brought to his shoulder when it was fired, but that he was holding it waist high.

Appellant stresses the friendly relationship between defendant and deceased and persuasively argues that the circumstances as a·whole show that defendant did not intentionally kill his friend.

■■ To be guilty of murder, one has to have the intention to kill a human being, but it does not have to be the person who is killed. The principle has been firmly established and was relatively recently applied in *Tolen v. State*, 49 Ala.App. 353, 272 So.2d 279, cert. denied 289 Ala. 752, 272 So.2d 281, and *Harris v. State*, 46 Ala.App. 189, 239 So.2d 331.

■ Appellant additionally argues that he did not intentionally kill anyone. He may not have done so, but a jury question was clearly presented, we think. There is nothing in the evidence to indicate that the gun would have gone off without a finger on the trigger. The only finger that could have been on the trigger would have been a finger of defendant. It was a bolt action three-shell gun. The empty shell˙ was found on the ground after the death of Williams. A live shell was found in the gun where it was placed by a cedar tree by

defendant. The shells were twelve gauge. The live shell contained No. 6 shot; such shot were found post mortem in the head of deceased. The porch was about four feet off the ground where defendant was standing at the bottom step. Deceased was standing on the porch at the time. Although appellant would not necessarily have known that the muzzle of the gun was pointed at the head of deceased, there can hardly be any question that he could have known and probably did know that it was pointed in the general direction of persons standing on the porch. Under these circumstances the jury was not required to believe his story that the gun went off accidentally. There was some evidence also of flight on the part of defendant for a short time, but we do not attach great significance to defendant's leaving the scene abruptly for a while, as did others. He returned in a short time and voluntarily faced the results of what occurred, for which he evinced regrets, and we are not disposed to doubt his sincerity.

█ Appellant further argues that there was no evidence of malice, an essential ingredient of murder even in the second degree. It is to be readily seen that if there was no intention to kill or fire the gun, there was no malice. But if defendant intentionally fired the gun under the circumstances stated, malice is inferable as a matter of plain logic, as well as a result of the application of the principle that the intentional and unjustified use of a deadly weapon in a manner calculated to cause death raises a presumption of malice that will prevail unless circumstances of the killing disprove or rebut malice. *Smith v. State*, 53 Ala.App. 141, 298 So.2d 71; *Pardue v. State*, 52 Ala.App. 339, 292 So.2d 147; *Williams v. State*, 51 Ala.App. 694, 288 So.2d 753.

█ Under all the circumstances of the tragic fatal shooting of seemingly a good man by his friend, the defendant, also seemingly a good man, the evidence as a whole convinces us that a jury question

was presented. In many respects the conduct of defendant, as well as the conduct of others, is perplexing. The argument in favor of his innocence as a murderer has some appeal, but we are convinced that the verdict of the jury is not contrary to the weight of the evidence and that the ground of the motion for new trial in this respect was not well taken. The extent of punishment, within the limits fixed by statute, was within the discretion of the jury.

We base our conclusions hereinabove reached upon the evidence as summarized hereinabove and the entire evidence in the case. We deem it necessary to narrate an additional item of evidence for an appropriate determination of the question next discussed.

There was another shotgun at or near the residence of deceased on the occasion of his death. There is no evidence that it was ever in the house, but according to the testimony of defendant, corroborated to some extent by other testimony, it was in the possession of one who was in the front yard, a well lighted yard. It was in the hands of one James Abston. Defendant saw Abston with the shotgun standing in the yard at the time defendant left the house to go to his trailer to get his shotgun. When he returned with his shotgun to the house of deceased, Abston was still standing in the yard with the shotgun in his hand. After the shot, Abston left the scene. On cross-examination of defendant, he testified that Abston was waving the gun while standing in the yard. He said that he did not see Abston waving it at defendant's brother or at defendant's father or that Abston threatened defendant. Abston was the stepfather of the girl defendant was going with at the time. On redirect examination of defendant the following occurred:

"Q Okay, M. B., you said James Abston had a gun out there waving it?

"A Yes, he did.

"Q All right, have you ever been shot before?

"MR. KIMBROUGH: I object to that, Judge.

"JUDGE LINDSEY: I sustain the objection.

"MR. LAURIE: Your Honor, I think it's very relevant.

"JUDGE LINDSEY: On what ground?

"MR. LAURIE: On the ground that it related to whether or not this defendant believed that he needed his gun.

"JUDGE LINDSEY: I sustain the objection. It's too far fetched.

"Q Has James Monroe Abston ever shot you?

"MR. KIMBROUGH: Object to that.

"JUDGE LINDSEY: I sustain the objection. We're not trying any other case but this case. I sustain the objection and exclude that from you. You will not consider it."

As previously indicated, we are convinced that the evidence justified a finding by the jury that defendant killed Williams intentionally and with malice aforethought. Nevertheless, we are not convinced that the jury could not have reasonably found otherwise. We think the evidence sought to be offered by an answer to the questions objected to would have had a bearing upon the issue of malice vel non and that of intention vel non.

 The rule to the effect that ordinarily evidence of a previous difficulty between defendant and deceased, or between defendant and a third party related to deceased, or connected with the fatal incident, in any homicide case, or a case of assault with intent to murder, is not admissible if there is no evidence of self-defense, or if the evidence shows conclusively that defendant was the aggressor thereby negating self-defense as a matter of law, is not controlling in a case of this kind, wherein defendant's defense is not based upon a claim of self-defense. Even if defendant had claimed that the shooting was in self-defense, this would not preclude him from showing that the offense was committed under circumstances reducing it to manslaughter. *Reeves v. State*, 186 Ala. 14, 65 So. 160 (1914); *Byrd v. State*, 257 Ala. 100, 57 So.2d 388 (1952). It necessarily follows that in a case in which he does not even claim self-defense he should not be precluded from showing the absence of any one or more of the elements constituting each degree of homicide charged in the indictment, including particularly intention and malice. The question of the admissibility of evidence as to a previous difficulty with deceased or others in homicide cases usually arises in connection with claims of self-defense and is usually determinable by considerations relative to such a claim. But this is not always true. In *Byrd v. State, supra*, the court concluded that there was not sufficient evidence of self-defense to justify proof by defendant of prior difficulties. Even so, the court went on to state:

"So far we have been dealing with the relevancy of proof offered by the defendant of prior difficulties and of the wounds suffered by him with respect to self-defense, but this evidence must now be considered from a different viewpoint."

And thereafter the court held that the defendant should have been allowed to show physical and emotional injuries received by him in the prior difficulties on the issue of whether defendant was acting under the heat of passion at the time of the shooting by reason of continuing pain from injuries suffered by him.

In *Johnson v. State*, 265 Ala. 360, 91 So.2d 476 (1956), defendant contended that he was entitled to go into the details and circumstances of a difficulty between himself and a third party because the State had previously produced evidence of such difficulty. The court agreed with the contention of defendant that where the State

introduces evidence of prior difficulty which is illegal, defendant can show all the particulars thereof to rebut the illegal evidence introduced by the State, but the court further held that the evidence as to the previous difficulty between defendant and a third person, that is such a difficulty between defendant and a third person that caused defendant to obtain the possession of a gun, did not constitute illegal evidence. The court said:

"This case, however, presents a peculiar situation. It is not testimony of a previous difficulty between Clarence Johnson and the decedent Homer Smith which is sought to be introduced, but details of a difficulty between Clarence Johnson and Jimmie Threadgill. Clarence Johnson was not being tried for any crime involving Jimmie Threadgill and in our judgment nothing detrimental to Clarence Johnson was brought out in connection with the previous difficulty with Jimmie Threadgill nor was any illegal evidence introduced. *The proof introduced by the State explained why the defendant had the shotgun with him in that Clarence Johnson felt the need of having the shotgun to protect himself against the acts of Jimmie Threadgill. The allowance of such proof was proper. Rollings v. State, 160 Ala. 82, 49 So. 329.* (Emphasis supplied)

"Ordinarily the details of a prior difficulty are not admissible beyond the proof of the prior difficulty and its gravity. *Bryant v. State,* 252 Ala. 153, 39 So.2d 657; *Bowen v. State,* 217 Ala. 574, 117 So. 204. *The testimony of Clarence Johnson himself showed that he got his gun to protect himself against Jimmie Threadgill because of the previous difficulty. Beyond this the defendant could not have testified and did not testify with reference to the difficulty with Jimmie Threadgill.* Beyond this there was no connection between the difficulty Clarence Johnson had with Homer Smith and the difficulty which he had with

Jimmie Threadgill. It is settled that evidence is inadmissible to show a difficulty between the accused and a third person in no way connected with the victim or the offense. *Wiggs v. State,* 24 Ala. App. 22, 129 So. 706." (Emphasis supplied).

▮▮▮ If defendant could have presented evidence that he had been shot or shot at by Abston, he should have been allowed to do so. Such evidence may not have been sufficient to have created a reasonable doubt in the minds of the jurors of the existence of intent or malice on the part of defendant, but it was of such a nature as to be calculated to have had an important bearing upon such issues. More so, perhaps, in this case than in many other cases, by reason of the singular circumstance of defendant's having a shotgun at a birthday party, which itself constituted two strikes against him. This could not be satisfactorily explained under the circumstances of this case on a theory that would justify his intentional shooting of the gun in order to injure or kill decedent or anyone on the porch or anyone in the house at the time the gun was discharged. Neither would his conduct in going for and returning with the gun have likely been justified in the minds of the jurors by what had happened inside the house with reference to his father and brother. On the other hand, a jury could have well found that, under all the circumstances that included particularly that of another gun being held and waved in the hands of another person who had shot defendant, he did not intend to shoot anyone on the porch of decedent's house and that there was no malice of defendant directed at anyone in the discharge of the gun. Instead of the evidence being too remote, we are of the opinion that it could well have been the difference between a verdict of guilty of murder in the second degree and a guilty verdict of homicide in a lesser degree, or even a verdict of not guilty.

Appellant has made other insistences of error, but we are convinced that they are

not well taken and that no prejudicial error was committed other than that which has been noted.

For the error pointed out, the judgment should be reversed and the cause remanded for another trial.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Reversed and remanded.

All the Judges concur.