We granted certiorari to review the Court of Criminal Appeals' decision affirming petitioner's murder conviction.
On the night of the killing, petitioner, Jared Jerome Weems, had been at a "gambling house" next door to the East North Cafe in Dothan, where he had won about $160.00. While in the house he purchased two cartons of cigarettes. When he left, he encountered a man outside the house who asked him for a pack of cigarettes. When Weems refused, the man slapped him and attempted to cut him with a knife, whereupon Weems fled. Weems had never seen the man before the altercation, but was later told that the man had recently come to Dothan from Florida.
Later that evening Weems returned to the area to retrieve his mother's car, which he had been driving. When he got to the car he discovered that during the course of the evening he had lost the car keys. He surmised that he had probably lost the keys during the altercation with the man from Florida. In an attempt to locate the keys, he decided to go into the East North Cafe to ask if anyone had found them. Fearing the possibility of another encounter *Page 171 
with the man from Florida, Weems decided to take into the cafe the gun which his mother kept in the car glove box.
Upon entering the cafe, he surveyed the patrons and determined that the man from Florida was not there. He noticed that a friend of his, Christine Wilson, whom he referred to as "Mama Chris", was at the cafe that night. Weems went over to talk to her. When Weems arrived at the table where Wilson was sitting, he realized that he still had the pistol in his hand. Weems testified that while he was in the process of putting the pistol away, it discharged and hit Ms. Wilson.
Numerous people who were in the cafe at the time of the shooting testified. Their accounts were substantially similar to Weems's and to each other's. Typical of the accounts of the shooting given at the trial was the one given by the bartender, Linton McIntyre. McIntyre testified that he was standing behind the counter facing the victim when she was shot. Neither he nor any of the other witnesses saw the shot being fired. When McIntyre heard the shot he looked in that direction and heard Wilson tell Weems, "Mister, you done shot me." McIntyre testified that Weems replied, "Mama Chris, if you are shot let me take you to the hospital." There was some confusion in the cafe as to whether Wilson had been shot or whether she had had a heart attack, because her wound did not bleed. McIntyre testified that Weems left "a couple of minutes" later.
On appeal, Weems argued that because he did not intend to kill Wilson, his conviction for murder was inappropriate. The Court of Criminal Appeals concluded that, although Weems may not have intended to shoot Wilson, there was evidence to support a finding that he had intended to shoot Sylvester Goodson, the man sitting at the table with the victim. The court noted that Weems did not know the man with whom he had had the altercation earlier and that it was "very likely that Weems thought Goodson was his attacker." The court based its conclusion that Weems was attempting to shoot Goodson on the fact that the trajectory of the bullet was parallel to the ground and the fact that the bullet was traveling in Goodson's direction. The court concluded that it was unlikely that Weems was attempting to place the gun under his belt since the trajectory of the bullet was parallel to the ground and that Goodson must have been the intended target, because the bullet was traveling toward him.
The problem with the Court of Criminal Appeals' transferred intent theory is that there was no more evidence that Weems was attempting to kill Goodson than there was that he intended to kill Wilson. Weems knew Goodson. He testified that Goodson was not the man who attacked him. There was no testimony given by any of the occurrence witnesses to the effect that there had been any sort of disagreement that evening, or on any previous occasion, between Weems and Goodson. It is patently obvious that intent to kill cannot be proved from the trajectory of the bullet alone. Obviously, whenever a person is shot, he is in the path of the bullet which hits him. If being in the path of the bullet were sufficient to prove intent, there would be no accidental shootings. Since there was no evidence of intent to kill Goodson other than the naked fact that Goodson was in the bullet's path, the conviction cannot be upheld on the theory that Weems was trying to shoot Goodson when Wilson was killed.
Indeed, the state does not even contend that Weems was trying to shoot Goodson. It argues that, "It is uncontradicted that the killing of `Mama Chris' was accidental; nonetheless, ample evidence was produced whereby a jury could easily infer Mr. Weems entered the East North Cafe with a cocked, loaded pistol, intending to shoot someone."
In support of its position, the state relies primarily onSashington v. State, 56 Ala. App. 698, 325 So.2d 205 (1975). The victim in that case was celebrating his 65th birthday with a party at his home when he was shot. The defendant, a guest at the party, lived in a trailer about 150 yards from the victim's house. A fight occurred during *Page 172 
the party involving the defendant's father and brother. Another individual was standing in the front yard waving a shotgun. The defendant went home and returned with a shotgun. One shot was fired from the defendant's gun in the direction of the front porch, killing the victim. The victim was a friend of the defendant, and the defendant argued that he had not intended to kill him. Additionally, the defendant argued that he had not intended to kill anyone. In holding the evidence presented a jury question as to intent to kill someone, the Court of Criminal Appeals relied on the transferred intent theory. It stated, "To be guilty of murder, one has to have the intention to kill a human being, but it does not have to be the person who is killed." 56 Ala. App. at 700, 325 So.2d at 207.
Under Alabama law an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case. An accidental death may constitute murder if, "[u]nder circumstances manifesting extreme indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death" to the victim and thereby causes the victim's death. Section 13A-6-2
(a)(2); Code 1975. On the other hand, if the defendant's conduct in bringing about the victim's death is simply "reckless," the defendant is guilty of manslaughter. Section13A-6-3 (a)(1). If the death results from "criminal negligence," the defendant is guilty of criminally negligent homicide. Section 13A-6-4 (a).
Alabama's homicide statutes were derived from the Model Penal Code. In providing that homicide committed "recklessly under circumstances manifesting extreme indifference to human life" constitutes murder, the drafters of the model code were attempting to define a degree of recklessness "that cannot be fairly distinguished from homicides committed purposely or knowingly." Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980). That standard was designed to encompass the category of murder traditionally referred to as "depraved heart" or "universal malice" killings. Examples of such acts include shooting into an occupied house or into a moving automobile or piloting a speedboat through a group of swimmers. See LaFave Scott, Criminal Law, § 70 (1972).
Recklessly causing another's death may give rise to the lesser included offense of manslaughter.[1] A defendant who recklessly causes another's death commits manslaughter if he "consciously disregard[ed] a substantial and unjustifiable risk that his conduct would cause that result." Model Penal Code and Commentaries, § 210.03, Comment 4 (1980). The difference between the circumstances which will support a murder conviction and the degree of risk contemplated by the manslaughter statute is one of degree, not kind. From a comparison of Sections 210.03 and 210.02 of the Model Code, it appears that the degree of recklessness which will support a manslaughter conviction involves a circumstance which is a "gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation," but is not so high that it cannot be "fairly distinguished from" the mental state required in intentional homicides. Compare Comment 4 to § 210.02 with Comment 4 to § 210.03.
If the homicide is brought about by "criminal negligence," the defendant is guilty of criminally negligent homicide. The essential difference between "recklessness," as that term is used in the murder and manslaughter statutes, and "criminal negligence" is that a reckless defendant is one who has "consciously disregarded" a substantial and unjustifiable risk, whereas a negligent actor needs only to disregard a risk of which he "should have been aware." Model Penal Code and Commentaries § 210.04, Comment 1. *Page 173 
In this case there was ample evidence that the defendant consciously disregarded a substantial and unjustifiable risk by carrying the pistol into the cafe. In so doing, Weems committed a "gross deviation" from the standard of conduct which would have been observed by a law-abiding person. The evidence would have supported a conviction for manslaughter, therefore. The degree of recklessness exhibited by Weems can, however, be distinguished from the extreme indifference to human life displayed by a person who commits an intentional homicide. These facts would, therefore, support a conviction of manslaughter, but not murder.
In our opinion, the facts of this case are distinguishable from Sashington v. State, 56 Ala. App. 698, 325 So.2d 205
(1975), which is relied on by the state. There was evidence inSashington to support a finding that the defendant was attempting to shoot someone else when he killed the victim. Here, the state concedes that "the killing of `Mama Chris' was accidental." Although Weems was grossly reckless, his disregard for the safety of those around him did not rise to a level of disregard for the value of human life that would be tantamount to proof of an intentional killing. The facts of this case appear to present a clear case of manslaughter. See, e.g.,Goffer v. State, 430 So.2d 896 (Ala.Crim.App. 1983).
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and EMBRY, JJ., concur.
BEATTY and ADAMS, JJ., dissent.
MADDOX and ALMON, JJ., not sitting.
[1] The trial judge, in his oral charge, charged the jury on murder, manslaughter, and criminally negligent homicide.