[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 514 
Joe Billy Toles was indicted for "intentionally caus[ing] the death of another person, to-wit: Ida Louise Hale, by shooting her with a gun or pistol," in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of murder as charged" and, following a sentencing hearing, the trial court fixed punishment at life imprisonment without parole, pursuant to the Habitual Felony Offender Act.
Lorene Simpson testified that on the evening of October 7, 1984, she was visiting Josephine and Anyee Butler. Upon her arrival at the Butler home she, Josephine Butler, and Ida Hale sat down in the dining area to talk. Anyee Butler and several others were in the kitchen area of the home. Not long after Simpson's arrival, the appellant came into the house, went into the kitchen and fired two shots with a pistol. Simpson, Josephine Butler, and Ida Hale jumped up and began running towards the front door of the home. Simpson and Butler exited the house, but Simpson did not see Mrs. Hale come outside. Simpson stated that Mrs. Butler and Mrs. Hale were about the same size. After the shooting stopped the appellant left the house and ran away.
Martha Jean Butler testified that she was the daughter of Josephine Butler and that Anyee Butler was her sister. On the night in question, Josephine Butler, Lorene Simpson, and Ida Hale were in the dining room area of the Butler home. She was in the kitchen of the home along with Anyee and several others. The appellant entered the home, came into the kitchen and shot Anyee two times. She stated that after shooting Anyee the appellant stated to Anyee that she had better die then or he was going to get her. (R. 19) She further testified that Anyee Butler had been living with the appellant, but she had recently come back home to live with her family.
Josephine Butler testified that the appellant came to her house at approximately 7:00 p.m. on the night of October 7, 1984. As he entered the home, appellant pointed a gun at her and stated "you're up with this s_____ too." (R. 27) Josephine asked appellant what he was referring to and he fired the gun as Ms. Simpson hit his hand. Appellant then walked into the kitchen and began shooting. Josephine then ran to a neighbor's house and called the police. When she returned home she saw Mrs. Hale lying on the floor in the front room and Anyee was lying on the floor in the kitchen.
Dr. Joseph Embry testified that he was employed by the Alabama Department of Forensic Science. As part of his job he performed an autopsy on Ida Louise Hale. Mrs. Hale had been shot three times. Dr. Embry stated that the cause of death was multiple gunshot wounds. Embry testified that one wound which Mrs. Hale had in her left hip had an area of "fouling" around it which would indicate this shot was made from close range — "a matter of inches, up to a foot." (R. 38) It was Embry's opinion that the lethal wound was a bullet which passed through the back of her left lung.
J.B. Jeffers testified that he was a detective employed by the Gadsden Police Department. On October 7, 1984, he was called to the Butler residence where he processed the scene for evidence. He then proceeded to the hospital and upon his arrival there he found that Mrs. Hale had died.
Jeffers saw the appellant the next day at City Hall. At this time appellant was arrested and informed of his rights. The appellant signed a waiver of rights form. Jeffers stated that no threats or other coercion or promises of reward were used to induce the appellant to sign the waiver. At the time of his arrest the appellant turned over the pistol used in the shooting.
Appellant gave the police a tape recorded statement at this time. He stated that he *Page 515 
bought a pistol and a box of shells. He then went to the Butler home and shot Anyee Butler. He further stated that when he shot Mrs. Hale he thought he was shooting Josephine Butler. (R.S. 4)
The appellant testified in his own behalf and generally corroborated the story related by the State witnesses. He stated that when he went to the Butler residence he had "hard feelings" for Anyee and Josephine Butler. He went into the home and shot Anyee Butler and meant to shoot Josephine Butler. However, he later found out that he had shot another lady instead.
 I
The appellant contends that the State did not carry its burden of proof in that they failed to show the requisite intent to kill Hale. He further argues that the State failed to show that he fired intentionally at Hale as alleged in the indictment. He states that he intended to kill Josephine Butler and "accidentally" shot Hale. Therefore, he could not be guilty of the intentional murder of Hale.
"A killing is not accidental when the act causing death is done intentionally. Lewis v. State, 96 Ala. 6, 10, 11 So. 259
(1891). Any contention that the death was accidental `ignores the nature of the enterprise that the defendant . . . [was]engaged in.' Sanders v. State, 16 Ala. App. 511, 513,79 So. 504 (1918)", Phelps v. State, 435 So.2d 158, 165
(Ala.Cr.App. 1983).
To be guilty of murder one must have the intention to kill a human being, but it does not have to be toward the person, who was killed. See Sashington v. State, 56 Ala. App. 698,325 So.2d 205 (1975), cert. denied, 295 Ala. 416, 325 So.2d 211 (1976);Harris v. State, 46 Ala. App. 189, 239 So.2d 331 (1970); Terryv. State, 397 So.2d 217 (Ala.Cr.App.), cert. denied,397 So.2d 223 (Ala. 1981); Murry v. State, 455 So.2d 53 (Ala.Cr.App. 1983), reversed on other grounds, 455 So.2d 72 (Ala. 1984).
Appellant was charged with the intentional murder of Hale under § 13A-6-2 (a)(1), Code of Alabama 1975. This Code section reads as follows:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person; or. . . ."
This section clearly establishes that liability attaches for intending to kill one person and instead killing another.
"Intent may be inferred from the character of the assault, the use of a deadly weapon and other attendant circumstances." See Harjo v. State, 395 So.2d 1104 (Ala.Cr.App. 1981). Intent may be implied in the murder of Hale from the evidence indicating that the appellant intentionally shot at Butler. SeeHarjo, supra. Moreover, the appellant's own testimony at trial and his statement given to police upon arrest indicate that he could not see well in the dimly lit room of the house, and he intentionally aimed his gun and fired at whom he thought was Josephine Butler. This person turned out to be Ida Hale. He further stated he intended to kill the person at whom he was shooting.
Clearly the trial judge's denial of appellant's motion for judgment of acquittal was proper based on the indictment and the proof elicited during trial.
 II
Appellant argues that reversible error occurred when the trial court denied his written requested jury charges. Appellant's requested charges read as follows: (S.R. 10)
 "1. If you find that the Defendant did not intentionally kill Ida Louise Hale, you should find Defendant not guilty of murder.
 "2. If you find that the Defendant intended to kill one person and killed another by mistake, you should find Defendant not guilty of murder."
A review of the trial court's oral charge reveals that appellant's first requested charge was substantially and fairly *Page 516 
covered by the trial court. "The refusal of a charge, though a correct statement of law, shall not be cause for a reversal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of the parties." Ala. Code §12-16-13 (1975); Campbell v. State, 423 So.2d 284 (Ala.Cr.App. 1982); Moore v. State, 457 So.2d 981 (Ala.Cr.App. 1984).
The appellant's second written requested charge was properly refused as it was an incorrect statement of the law. See Craftv. State, 402 So.2d 1078 (Ala.Cr.App.), cert. denied,402 So.2d 1080 (Ala. 1981); Brown v. State, 392 So.2d 1248
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1266 (Ala. 1981).
Moreover, even though the charges appear in the record, the failure of the trial court to endorse the charges as given or refused, or to sign the defendant's written request for jury instructions precludes this court from considering the charges on appeal. See Maund v. State, 361 So.2d 1144 (Ala.Cr.App. 1978); Stoudemire v. State, 365 So.2d 376 (Ala.Cr.App. 1978);Woods v. State, 387 So.2d 313 (Ala.Cr.App. 1980). See also, Ala. Code § 12-16-13 (1975) and Rule 14, Alabama Temporary Rules of Criminal Procedure.
A review of the record indicates that the trial judge was correct in refusing appellant's written requested charges.
 III
Appellant argues that the Alabama Habitual Felony Offender Act was unconstitutionally applied in his case. He specifically contends that his prior felony convictions were obtained in 1969 when he was 19 years old and that the use of such convictions obtained before the enactment of the Youthful Offender Act is unconstitutional since he did not have access to Youthful Offender status.
The rule in this State is that felony convictions which occurred before the effective date of the new Alabama Criminal Code are to be considered as prior felonies under the Habitual Felony Offender Act "if the conduct made the basis of that conviction constitutes a felony under Act 607, § 130 (4), Acts of Alabama 1977, p. 812 (§ 13A-1-2 (4), Alabama Criminal Code), or would have constituted a felony under that section had the conduct taken place in Alabama on or after January 1, 1980." Rule 6 (b)(3)(iv), Alabama Temporary Rules of Criminal Procedure; Lidge v. State, 419 So.2d 610 (Ala.Cr.App.), cert. denied, 419 So.2d 616 (Ala. 1982); Minnifield v. State,439 So.2d 190 (Ala.Cr.App. 1983). Further, "[a]ll felony convictions which occurred before the commission of the present felony are to be considered `regardless of their origin.'Watson v. State, 392 So.2d 1274, 1279 (Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981); James v. State,405 So.2d 71, 74 (Ala.Cr.App. 1981)." Lidge, supra at 614.
"The obvious intent of the legislature in enacting this section was to authorize the infliction of a more severe penalty on one who is a persistent offender regardless of when the prior convictions occurred." James v. State, 405 So.2d 71
(Ala.Cr.App. 1981); Watson v. State, 392 So.2d 1274
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 1280 (Ala. 1981).
Appellant's prior convictions which were used to enhance his sentence under the Habitual Felony Offender Act were: (1) burglary and grand larceny, (2) forgery, 2nd degree, and (3) assault with intent to murder. Appellant's conduct constituted felonies in Alabama at the time he committed such crimes. Further, such crimes would have been felonies in Alabama if they had been committed after January 1, 1980, as stated in Rule 6, Alabama Temporary Rules of Criminal Procedure. There is no indication from the record that appellant would have been given youthful offender status had these crimes been committed after the Youthful Offender Act had been enacted. Such treatment is a discretionary matter with the trial court. See §15-19-1, Code of Alabama 1975. Moreover, no age limit on prior convictions *Page 517 
which may be used to enhance punishment has been prescribed by the legislature and, therefore, it can only be presumed that none was intended. We must hold that the trial court acted properly in using these prior convictions.
A careful review of the record reveals no errors injurious to the substantial rights of the appellant. Therefore, this cause is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.