The appellant, Patrick Wayne Bunn, was convicted of murder and was sentenced, as a habitual felony offender with three prior felony convictions, to life imprisonment without the possibility of parole. Ala. Code 1975, § 13A-6-2(a)(1); §13A-5-9. He appeals, raising one issue: whether the trial court committed reversible error by refusing to charge the jury on the lesser included offense of reckless manslaughter.[1] §13A-6-3(a)(1). The appellant timely submitted a written requested jury instruction to the trial court on reckless manslaughter, thus preserving the issue for review. The state questions the sufficiency of the requested instruction; however, we find that it was sufficient to have apprised the trial court of the issue and, indeed, the record shows that it did.
At trial, the court instructed the jury on intentional murder, manslaughter committed in the heat of passion, justification based on self-defense, and accident. §13A-6-2(a)(1); § 13A-6-3(a)(2); and § 13A-3-23, respectively.
The killing in the instant case arose out of an altercation between the appellant and the victim, Jack McDaniel. In the early morning hours of August 20, 1988, the appellant went with his girlfriend to look for her automobile which she had loaned to a friend. They located the automobile at a residence where a party was in progress. The appellant obtained the keys to the vehicle, opened the door on the driver's side, and just as he was attempting to enter the vehicle, without warning, the victim, who had been "drinking," slapped him on the side of his head, knocking him to his knees. He had known the victim for some time; they had previously been on friendly terms, and they had worked together. The appellant's encounter with the victim was unexpected. The appellant stood up and as he attempted to enter the vehicle again, the victim kicked the door, closing it. The victim then moved threateningly toward the appellant again. The appellant testified, as follows:
 "Q. [Defense counsel]: After you were struck, I think you testified that he said something about what are you going to do and you said 'I'm leaving'?
"A. Right.
 "Q. Now then, at that point in time, did he turn around and go back in the house, or what did he do, if anything?
 "A. Well, I was getting up when he asked me what I was going to do. I told him I was going to leave. And that's when he kicked the door closed. And that's when I seen that he had something in his hand, what appeared to be something in his hand, and that's when I pulled the pistol out.
"Q. Pulled the pistol out from where?
"A. I had it in the back of my belt.
"Q. How long had you had that pistol at this time?
"A. About seven hours, eight hours.
 "Q. Now, when you pulled the pistol out, what happened?
 "A. Well, he was coming at me. He kicked the door closed and he was coming at me.
". . . .
 "A. . . . And so I was trying to back up to get away from him, and that is when the pistol went off. And he stuck his hands to his chest and quit coming at me.
". . . .
 "A. Well, it was then when I realized that the gun had went off and he was shot. I was still numb from the smack on the head. *Page 561 
 "Q. Then after the gun went off and he stepped back, what, if anything, did you do then?
 "A. Well, I walked around to see what I could do. And he fell to the ground. Then people were hollering and screaming and stuff, and I was scared. . . .
"Q. So what did you do?
"A. So I left.
". . . .
 "Q. [Prosecuting attorney on cross-examination]: And then you pulled the trigger out there, didn't you? You pulled back and then pulled the trigger, did you not?
"A. I don't recall pulling the hammer back.
"Q. Isn't that the way the gun shoots?
"A. Yes, ma'am.
 "Q. So you have to pull the hammer back; isn't that right?
"A. Yes, ma'am.
". . . .
"Q. What did you do when you got to Atlanta?
"A. Well, I went to some friends of mine's house.
". . . .
"Q. Did you tell them you had just killed a man?
"A. I told them I had accidentally shot a man.
"Q. You told them you had accidentally shot a man?
"A. Yes, ma'am."
The pistol that the appellant was carrying was unique in that it was a replica of an antique ball and cap .44 caliber revolver. In loading it, the ball, powder, and cap must be individually placed for each round. The appellant explained that he was carrying the pistol because of recent vandalism in his neighborhood. The appellant's account of the events leading up to the time the pistol discharged is corroborated by the other witnesses; however, he is the only one who testified that the victim appeared to have something in his hand.
"An individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position." Chavers v. State, 361 So.2d 1106,1107 (Ala. 1978) (emphasis added). See also Turner v. State,542 So.2d 1314 (Ala.Cr.App. 1989); Lovell v. State,521 So.2d 1346 (Ala.Cr.App. 1987). "The court shall not charge the jury with respect to an included offense unless there is a rationalbasis for a verdict convicting the defendant of the included offense." § 13A-1-9(b) (emphasis added).
"Under Alabama law an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case." Ex parte Weems,463 So.2d 170, 172 (Ala. 1984).
 "One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all."
Robinson v. State, 441 So.2d 1045, 1047 (Ala.Cr.App. 1983). See also Williams v. State, 506 So.2d 368 (Ala.Cr.App. 1986), cert. denied, 506 So.2d 372 (Ala. 1987).
We think that the unexpected nature of the confrontation, the appellant's efforts to avoid the confrontation, his lack of familiarity with the pistol, his concern for the victim after the victim was shot, coupled with his testimony that the pistol "went off," that he did not remember pulling the hammer back, and that he told certain persons shortly after the shooting that it was accidental, considered together, give rise to an interpretation of the evidence which would have supported a jury verdict of reckless manslaughter. We think this evidence presents at least a rational basis or reasonable theory for convicting the appellant of reckless manslaughter. From the evidence presented, the jury obviously inferred, as was its perogative, that the appellant intended to kill the victim; however, from these same facts, the jury could also have found, had it had the option, that the *Page 562 
appellant did not intend to cause death, but acted with conscious and reckless disregard of the substantial and unjustifiable risk of death. Under the charge given by the trial court, the jury's alternatives were to convict of murder or to acquit, unless it found appellant guilty of manslaughter in the heat of passion. To force the jury to choose one of these alternatives, under the evidence of the case, raises the possibility that the appellant might have been convicted of murder though his guilt was of a lesser degree. The trial court's refusal to charge reckless manslaughter constituted reversible error.
REVERSED AND REMANDED.
All Judges concur.
[1] Pursuant to Ala. Code 1975, § 13A-6-3(a)(1), "A person commits the crime of manslaughter if [he] recklessly causes the death of another person." Under § 13A-2-2, "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."