PARKER, Justice.
The State petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals’ decision reversing Sean Travis Howard’s criminal conviction based on the trial court’s failure to charge the jury on manslaughter as a lesser offense to capital murder, the offense with which Howard was charged. See Howard v. State, 85 So.3d 1048 (Ala.Crim.App.2009). We granted certiorari review to consider whether the Court of Criminal Appeals’ decision in Howard conflicts with its decision in Fox v. State, 659 So.2d 210 (Ala. Crim.App.1994). See Rule 39(a)(1)(D), Ala. R.App. P. For the following reasons, we conclude that it does, and we reverse the Court of Criminal Appeals’ judgment.

Facts and Procedural History

In its opinion, the Court of Criminal Appeals summarized the relevant procedural history and undisputed facts:
“Sean Travis Howard was charged with capital murder and was convicted of reckless murder, see § 13A-6-2(a)(2), Ala.Code 1975. The trial court sentenced him to life imprisonment and ordered him to pay court costs, restitution, and applicable fines. On appeal, Howard contends that, with regard to the trial court’s oral instructions to the jury pertaining to the charge of capital murder, the trial court erred in failing to charge the jury on manslaughter as a lesser-included offense to capital murder. Because the record in this case contains evidence that, if believed by the jury, could reasonably support a conviction for manslaughter, we conclude that the trial court erred in failing to instruct the jury on manslaughter as a lesser-included offense. We reverse and remand.
“On August 5, 2007, while walking down the street with Courtney Coley, Howard stared at Stanley Jackson, and Jackson’s cousin, Javon Gray, who had arrived in Gray’s dark gray four-door vehicle at Rod Belser’s house on the corner of Honeybee Court and Briar-hurst Drive in Montgomery to purchase marijuana. Howard scowled at Gray and Jackson and mumbled something in response to a statement Gray made to him. The four exchanged words about the red clothing, indicating gang membership, that Howard and Coley were wearing. Howard, Jackson, and Gray continued to engage in a verbal altercation while Gray and Jackson walked toward Belser’s house. Gray and Jackson knocked on Belser’s door, but one of the several children playing outside in the yard indicated that Belser was not at *1056 home. When Gray and Jackson headed back to their vehicle, Howard shouted at them. Gray and Jackson, who were unarmed, retorted, “‘F[ — ] y’all.’” Howard pulled a silver .38 caliber pistol from the waistband of his pants. R.J., the victim’s brother, recalled that Howard told Coley to move and said, ‘ “I’m fixing to shoot this N[-] right here,” ’ while pointing the pistol at Gray. Coley, who was also unarmed, tried to push Howard’s hand down, reminding Howard that children were in the vicinity. Coley continued to wrestle the gun from Howard. Several shots were fired and three-year-old S.J. was hit. Once Howard fired the first shot, Coley ran. After firing several shots, Howard ran off, and Gray and Jackson sped away in Gray’s car headed toward Jackson’s house to get a gun. The victim, S.J., was taken by ambulance to the hospital where he was pronounced dead.
“According to the medical examiner, S.J., the "victim, died from a single gunshot wound to the back. The medical examiner removed the projectile from the right chest wall. The forensic examiner tested the recovered projectile and determined that it was consistent with a .38 caliber bullet.
“Investigator E.E. Howton, Jr., with the Montgomery Police Department searched the crime scene along with Detective G.R. Timmerman and Corporal S.E. Wilson. The officers discovered a couple of bullet holes from a .38 caliber pistol in the house located at 6065 Briar-hurst Drive near where the victim was shot and several .45 caliber shell casings further down on Eric Lane. They also discovered three .38 caliber shell casings near a ditch close to where the victim was found lying on the ground. The officers also recovered a single .38 caliber projectile at the corner of Honeybee Court near where the victim was shot.
“The defense elicited testimony from several witnesses about the number of and description of the vehicles present, the clothing and physical attributes of the alleged perpetrators, and other surroundings at the time of the shooting. Several defense witnesses recalled other vehicles, in addition to a dark-colored four-door vehicle, at the scene. Defense witness Corporal S.E. Wilson with the Montgomery Police Department, who was the case agent assigned to this case, testified about the inconsistencies in the statements by the eyewitnesses immediately after the shooting and the trial testimony. While Corporal Wilson acknowledged that several witnesses’ statements were inconsistent with statements made by Gray, Jackson, and R.J. and with trial testimony, he stated that the officers arrested Howard, in spite of the inconsistent statements, because Gray, Jackson, and R.J. were in closer proximity to the shooting than were the defense witnesses.
“During the charging conference, the trial court, after hearing argument of counsel, refused to charge the jury on manslaughter as a lesser offense, because, it determined, the charge was not warranted under the facts of the case. The following exchange occurred:
“ ‘[The Court]: It would be my intent to charge the jury on capital murder and reckless murder. I do not think the behavior, if it is to be believed, would merit less than that. So I think those would be the two instructions that I am giving.
“ ‘[Defense Counsel]: Judge, for the record, we would request manslaughter as being an issue of intent, and whether or not there were multiple people that were exposed to risk of death or serious bodily harm, and that that should be a fact finding question *1057 for the jury and they should have the opportunity to consider manslaughter in this case.
“ ‘[The Court]: And I have thought about that, but I don’t think the facts merit that. So I am going to give those two instructions to the jury.
“ ‘[Defense Counsel]: Judge, if we could note our objection for the record.
“‘[The Court]: Sure.’
“The trial court instructed the jury on the elements of the capital offense charged, i.e., murder committed when the victim is less than 14 years of age, § 13A-5^0(a)(15), Ala.Code 1975. The trial court also instructed the jury on reckless murder as a lesser offense, i.e., murder committed with extreme indifference to human life, § 13A-6-2(a)(2), Ala.Code 1975. The issue was properly preserved for review by objection.”
Howard, 85 So.3d at 1049-51 (footnote and citations to the record omitted).
The Court of Criminal Appeals then set forth the law concerning a defendant’s entitlement to a jury instruction on a lesser offense included in the charged offense, as follows:
“As this Court said in Breckenridge v. State, 628 So.2d 1012 (Ala.Crim.App. 1993), regarding a defendant’s entitlement to an instruction on a lesser-included offense:
“ ‘A defendant accused of a greater offense is entitled to have the trial court charge on any lesser included offense if there is any reasonable theory from the evidence to support the lesser charge, regardless of whether the state or the defendant offers the evidence. Ex parte Pruitt, 457 So.2d 456 (Ala.1984); Parker v. State, 581 So.2d 1211 (Ala.Crim.App.1990), cert. denied, 581 So.2d 1216 (Ala.1991). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury. Anderson v. State, 507 So.2d 580 (Ala.Crim.App. 1987). “ ‘[E]very accused is entitled to have charges given which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.’” Ex parte Stork, 475 So.2d 623, 625 (Ala.1985) (quoting Ex parte Chavers, 361 So.2d 1106, 1107 (Ala. 1978)). Section 13A-l-9(b)[, Ala.Code 1975,] provides, “The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.” ’
“628 So.2d at 1016. Although the better practice is to charge on all lesser offenses supported by the evidence, if ““ “ ‘it is perfectly clear to the judicial mind that there is no evidence tending to’ ” ”” support the lesser offense, Fox v. State, 659 So.2d 210, 213 (Ala.Crim. App.1994), quoting Anderson v. State, 507 So.2d 580, 583 (Ala.Crim.App.1987), quoting in turn other cases, then the trial court cannot be put in error for not charging the jury on the lesser offense.”
85 So.3d at 1051-52. The Court of Criminal Appeals then applied the above law, as follows:
“We address whether there was any evidence to support a reasonable theory by which Howard could have been found guilty of manslaughter. Allen v. State, 546 So.2d 1009 (Ala.Crim.App.1988). Howard was charged with murder made capital pursuant to § 13A-5-40(a)(15), *1058 Ala.Code 1975, because the victim was under 14 years of age. Section 13A-5-40(b), which defines capital murder, provides as follows:
“ ‘Except as specifically provided to the contrary in the last part of subdivision (a)(13) of this section [§ 13A-5-40], the terms “murder” and “murder by the defendant” as used in this section to define capital offenses mean murder as defined in Section 13A-6-2(a)(1), but not as defined in Section 13A-6-2(a)(2) and (3). Subject to the provisions of Section 13A-5-41, murder as defined in Section 13A-6-2(a)(2) and (3), as well as murder as defined in Section 13A-6-2(a)(l), may be a lesser included offense of the capital offenses defined in subsection (a) of this section.’
“Section 13A-5-41[, Ala.Code 1975,] provides:
“ ‘Subject to the provisions of Section 13A-l-9(b), the jury may find a defendant indicted for a crime defined in Section 13A-5-40(a) not guilty of the capital offense but guilty of a lesser included offense or offenses. Lesser included offenses shall be defined as provided in Section 13A-l-9(a), and when there is a rational basis for such a verdict, include but are not limited to, murder as defined in Section 13A-6-2(a), and the accompanying other felony, if any, in the provisions of Section 13A-5-40(a) upon which the indictment is based.’
“Reckless murder is a lesser-included offense of capital murder as defined in § 13A-5-40(a)(15). See, e.g., Fox v. State, [659 So.2d 210 (Ala.Crim.App. 1994) ]. ‘Under Alabama law an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case.’ Ex parte Weems, 463 So.2d 170, 172 (Ala.1984). “‘One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. [He can be] guilty of either murder or manslaughter or ... guilty of nothing at all.”’ Bunn v. State, 581 So.2d 559, 561 (Ala.Crim.App. 1991), quoting Robinson v. State, 441 So.2d 1045, 1047 (Ala.Crim.App.1983).
“The jury convicted Howard of reckless murder pursuant to § 13A-6-2(a)(2), Ala.Code 1975, which states, in pertinent part:
“‘(a) A person commits the crime of murder if he or she does any of the following:
[[Image here]]
“ ‘(2) Under circumstances manifesting extreme indifference to human life, he or she recklessly engages in conduct which creates a grave risk of death to a person other than himself or herself, and thereby causes the death of another person.’
“In the alternative, ‘[a] person commits the crime of manslaughter if he recklessly causes the death of another person.’ § 13A-6-3(a)(l), Ala.Code 1975. Section 13A-2-2(3), Ala.Code 1975, defining ‘recklessly,’ provides:
“‘A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.’
*1059 “In Ex parte Weems, supra, the Alabama Supreme Court explained the difference between the degree of recklessness that constitutes murder and the degree of recklessness that constitutes manslaughter as follows:
“ ‘Alabama’s homicide statutes were derived from the Model Penal Code. In providing that homicide committed “recklessly under circumstances manifesting extreme indifference to human life” constitutes murder, the drafters of the model code were attempting to define a degree of recklessness “that cannot be fairly distinguished from homicides committed purposely or knowingly.” Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980). That standard was designed to encompass the category of murder traditionally referred to as “depraved heart” or “universal malice” killings. Examples of such acts include shooting into an occupied house or into a moving automobile or piloting a speedboat through a group of swimmers. See LaFave & Scott, Criminal Law, § 70 (1972).
“ ‘Recklessly causing another’s death may give rise to the lesser included offense of manslaughter. A defendant who recklessly causes another’s death commits manslaughter if he “consciously disregard[ed] a substantial and unjustifiable risk that his conduct would cause that result.” Model Penal Code and Commentaries, § 210.03, Comment 4 (1980). The difference between the circumstances which will support a murder conviction and the degree of risk contemplated by the manslaughter statute is one of degree, not kind. From a comparison of Sections 210.03 and 210.02 of the Model Code, it appears that the degree of recklessness which will support a manslaughter conviction involves a circumstance which is a “gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation,” but is not so high that it cannot be “fairly distinguished from” the mental state required in intentional homicides. Compare Comment 4 to § 210.02 with Comment 4 to § 210.03.’
“463 So.2d at 172 (footnote omitted). As this Court said in Fox v. State, supra:
“ ‘The strongest evidence that supports an instruction on manslaughter is the fact that the jury specifically found the appellant guilty of “reckless murder,” § 13A-6-2(a)(2), which requires a similar mental state to the offense of “reckless manslaughter.” § 13A-6-3(a)(l). See McLaughlin v. State, 586 So.2d 267 (AIa.Crim.App. 1991).’
“659 So.2d at 213.
“Based on the facts of this case and the applicable law regarding when a defendant is entitled to a jury charge on a lesser-included offense, we must reverse Howard’s conviction and remand the case. See § 13A-l-9(b), Ala.Code.1975; Ex parte Smith, 756 So.2d 957 (Ala. 2000); Fox v. State, supra. In this particular case, there is evidence that several shots were fired from Howard’s .38 caliber pistol near a yard where several children were playing as Coley struggled with Howard to wrestle the pistol from his hand. Based on the evidence presented at trial, we hold that there was sufficient evidence of manslaughter to warrant submitting it to the jury. Thus, the trial court erred in failing to charge the jury on manslaughter. Accordingly, Howard’s conviction and sentence are due to be reversed, and this cause is remanded to the trial court for proceedings consistent with this opinion.”
*1060 85 So.3d at 1052-54. The State then petitioned this Court for certiorari review of the Court of Criminal Appeals’ decision.

Standard of Review

“Where, as here, an appellate court reviews a trial court’s conclusion of law and its application of law to the facts, it applies a de novo standard of review. Washington v. State, 922 So.2d 145, 158 (Ala.Crim.App.2005).” Stewart v. State, 990 So.2d 441, 442 (Ala.Crim.App.2008).

Discussion

The State asserts that the Court of Criminal Appeals’ holding that “the trial court erred in failing to charge the jury on manslaughter,” 85 So.3d at 1049, was in error because, the State argues, there was no evidence in the record to support charging Howard with the offense of manslaughter. For that reason, the State argues that the Court of Criminal Appeals’ decision conflicts with the following holding in Fox: “ ‘A court may properly refuse to charge on a lesser included offense ... when ... it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense....’” 659 So.2d at 212 (quoting Anderson v. State, 507 So.2d 580, 582 (Ala.Crim.App.1987)). We agree.
The Court of Criminal Appeals set forth the pertinent and well established law in its opinion concerning the definitions of reckless murder and manslaughter and the degrees of recklessness associated with those offenses. The Court of Criminal Appeals concluded that “the trial court erred in failing to charge the jury on manslaughter,” 85 So.3d at 1054, because, the Court of Criminal Appeals determined, “[i]n this particular case, there is evidence that several shots were fired from Howard’s .38 caliber pistol near a yard where several children were playing as Coley struggled until Howard to utrestle the pistol from his hand.” Howard, 85 So.3d at 1053 (emphasis added).[1] The Court of Criminal Appeals cites no other evidence in support of its conclusion that the trial court erred in failing to charge the jury on manslaughter as a lesser-included offense. We disagree with the Court of Criminal Appeals’ characterization of the evidence— that “several shots were fired ... as Coley struggled with Howard to wrestle the pistol from his hand.” A review of the record does not reveal that shots were accidentally fired while Howard struggled with Coley over possession of the gun. Rather, the record reflects that Howard fired shots at Gray after he and Coley had stopped struggling. R.J., an eyewitness to the shooting and the victim’s brother, testified at trial concerning the events surrounding the shooting:
“Q. [Prosecution:] Where was [Howard] standing when he pulled out the gun?
“[R.J.:] By the ditch.
[[Image here]]
“Q. Did you hear [Howard] say anything when he pulled out the gun?
“A. Uh-huh.
“Q. What did he say?
“A. He said I am going to shoot (unintelligible.)
“COURT REPORTER: I didn’t understand that.
*1061 “Q. Can you say it for me a little bit slower and a little bit louder? I know you have a cough.
“A. [Howard] said, ‘Move, [Coley], I am going to shot [sic] this nigger right here.’
“Q. [Howard] said, ‘Move, [Coley], because I’m fixing to shoot this ‘N’ right here.’ Did I get that right?
“A. Yes, ma’am.
[[Image here]]
“Q. Was [Coley] the other guy that was with him?
“A. Yes, ma’am.
“Q. Can you help me understand where [Coley] was standing and where—
“A. He was right by [Howard].
“Q. He was right by [Howard]?
“A. Uh-huh.
“Q. And when he said ‘Move, [Coley],’ what was [Coley] trying to do?
“A. Get the gun out of [Howard’s] hand.
[[Image here]]
“Q. And you said [Howard] pulled it out and [Coley] tried to push it out of [Howard’s] hand?
“A. Yes, ma’am.
“Q. And then [Howard] said, what you just told us. Did I get that right?
“A. Yes, ma’am.
“Q. And [Howard] is telling [Coley], move out of the way, I am fixing to shoot. Is that right?
“A. Yes, ma’am.
“Q. How was [Howard] holding the gun?
“A. Just like that (indicating).
“Q. So just like this?
“A. Uh-huh.
“Q. For the record, you are showing your hand in a fist. Was the gun pointed up, or was it to the side?
“A. Up.
“Q. Was it pointed at anyone in particular?
“A. At [Gray],
“Q. At [Gray]. Okay.
[[Image here]]
“Q. Did [Howard] ever fire that gun?
“A. Who, [Howard]?
“Q. Uh-huh.
“A. Yes, ma’am.
“Q. About how many times did [sic] you think he fired that gun?
“A. Three.
“Q. Do you know if one of those shots hit your brother?
“A. Yes, ma’am.
“Q. How do you know that?
“A. Because when [Howard] shot, he had shot at [Gray’s] leg. The bullet had missed [Gray] and hit my brother in the back.
“Q. Okay. So the bullet went past [Gray’s] leg, is that what you said, and hit your brother in the back?
“A. Yes, ma’am.”
Nothing in R.J.’s testimony indicates that any shots were fired while Coley was struggling with Howard for possession of the gun. Instead, R.J.’s testimony indicates that after Coley’s attempt to stop Howard from shooting the gun at Gray was broken off, Howard took aim at Gray’s leg and fired a shot, which missed Gray’s leg and hit S.J. in the back. Further, Marcus Williams, a witness called by Howard, testified that Coley “tried to hit [Howard’s] gun out of [Howard’s] hand” “[bjefore [Howard] started shooting.” (Emphasis added.) The record also indicates, as the Court of Criminal Appeals notes in its opinion, that Coley fled after *1062 Howard fired the first shot and that Howard proceeded to shoot several more shots. Therefore, it appears that the view of the evidence relied upon by the Court of Criminal Appeals in its conclusion that the trial court erred in failing to charge the jury on manslaughter as a lesser-included offense to the offense of capital murder is not supported by the record, and Howard does not direct this Court to any other evidence that would support the Court of Criminal Appeals’ conclusion.
The record indicates that Howard intentionally took several shots at Gray, who was standing in close proximity to a group of children. The record also indicates that Howard was aware of the presence of the children in the vicinity where he would be shooting, as evidenced by Coley’s warnings to Howard and the struggle between Coley and Howard immediately before and as Howard began shooting. Reckless murder and reckless manslaughter do not involve the same degree of recklessness.
“The difference between the circumstances which will support a murder conviction and the degree of risk contemplated by the manslaughter statute is one of degree, not kind.... [T]he degree of recklessness which will support a manslaughter conviction involves a circumstance which is a ‘gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation,’ but is not so high that it cannot be ‘fairly distinguished from’ the mental state required in intentional homicides.”
Ex parte Weems, 463 So.2d 170, 172 (Ala. 1984). Further,
“[i]n ‘reckless’ or ‘universal malice’ murder, ‘the defendant evinces a culpable mind, determined to act no matter what the consequences to others. He must have determined to follow a course of action which he knows, or should know, will, in all probability, lead to harm to another.’ Napier v. State, 357 So.2d 1011, 1014 (Ala.1978). ‘The word “determines” presupposes that some mental operation has taken place; the reasoning faculty must be called into play.’ Langford v. State, 354 So.2d 313, 315 (Ala.1977).
“ ‘In providing that homicide committed “recklessly under circumstances manifesting extreme indifference to human life” constitutes murder, the drafters of the model code were attempting to define a degree of recklessness “that cannot be fairly distinguished from homicides committed purposely or knowingly.” Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980).’
“Ex parte Weems, 463 So.2d at 172.”
Woods v. State, 602 So.2d 1210, 1211-12 (Ala.Crim.App.1992).
Howard’s actions exceeded that degree of recklessness that constitutes manslaughter and fit squarely within the degree of recklessness that constitutes reckless murder. As the trial court, quoting Fox, 659 So.2d at 213, held, “‘“‘“it is perfectly clear to the judicial mind that there is no evidence tending to” ”” ” support a manslaughter charge as a lesser-included offense to capital murder because Howard was determined to follow through on a course of action that would create a grave risk of death to a person other than himself, and thereby cause the death of another person. Fox v. State, 659 So.2d at 213 (quoting Anderson v. State, 507 So.2d 580, 583 (Ala.Crim.App.1987), quoting in turn other cases). Therefore, we hold that the Court of Criminal Appeals’ decision is in conflict with Fox, and we therefore reverse the Court of Criminal Appeals’ judgment holding that the trial court erred in failing to charge the jury on manslaughter as a lesser-included offense to the charged offense of capital murder.

*1063
Conclusion

' Based on the foregoing, the judgment of the Court of Criminal Appeals is reversed and the case remanded to the Court of Criminal Appeals for proceedings consistent with this opinion.
REVERSED AND REMANDED. 
MALONE, C.J., and WOODALL, STUART, BOLIN, and SHAW, JJ„ concur.
MURDOCK, J., dissents.
MAIN and WISE, JJ., recuse themselves.**

. Earlier in its opinion, the Court of Criminal Appeals stated that "Coley continued to wrestle the gun from Howard. Several shots were fired and three-year-old S.J. was hit. Once Howard fired the first shot, Coley ran. After firing several shots, Howard ran off....” Howard, 85 So.3d at 1050 (emphasis added). We note that this characterization of the evidence is clearly contradictory with its later characterization of the evidence indicating that Howard fired several shots as he struggled with Coley.