HUBERT TAYLOR, Judge.
Appellant, Jared Jerome Weems, was convicted of murder and sentenced to thirty years in the penitentiary. Weems contends, on appeal, that the judge erred by refusing to grant his motion for a new trial on the grounds that the verdict of the jury was not supported by the evidence. A summary of the evidence, presented in a light most favorable to the State, as we are required to consider it, is set out below.
Weems had gone to a bar called the East North Cafe in the City of Dothan. After drinking a couple of beers, he made the rounds in and out of the establishments and gambling houses in the vicinity. While at the gambling house next door to the East North Cafe, Weems won about two hundred dollars. Weems took his winnings, left the gambling house, and either headed back toward the East North Cafe *169 or his car. While en route, he was assaulted by an unknown man with a knife who tried to cut him. Weems dropped his cigarettes and keys and .ran from the area.
At some point later in the evening, Weems came back to the East North Cafe, supposedly to pick up his mother’s car. Weems was unable to find his keys so he decided to ask about them in the bar. Before going into the bar, however, he pulled a gun out of the glove compartment of the car. He testified that he took the gun with him because he was afraid that the man who assaulted him would be in the bar.
The East North Cafe was very crowded on this particular night and very noisy. Sitting at one table was Christine Wilson, the victim, and Sylvester Goodson. Christine was sitting with her back partially to the wall and Goodson was sitting to her right at the corner of the table. Christine’s daughter, Fronnie, sat at the next table. Fronnie testified that Weems came over and stood behind her mother. She did not notice a gun and did not pay any attention to them since they were friends.
About ten or fifteen minutes later, a shot was fired and all the people in the bar became very quiet. Christine said to Weems, “Mr., you have shot me.” He evidently replied, “Ma’am, if I shot you, I will take you to the hospital.” Christine fell to the floor and Fronnie went and knelt over her. Fronnie said to Weems, “Nigger, you have shot my mama.” Weems replied, “Yeah, I shot your mama.” Weems was holding the pistol in his hand at that time, trying to tuck it behind his belt into his pants. He left hurriedly after the shot was fired, not waiting for the paramedics or police to arrive. No one present in the cafe saw the fatal shot or noticed that Weems had a gun until after it had discharged. Weems was not brandishing the weapon or fighting with anyone in the cafe. Weems later gave the gun to his sister, who “disposed” of it. Upon learning that the police were looking for him, Weems turned himself in.
Charles Brooks, an analyst for the Alabama Department of Forensic Sciences, testified that he received a parka type coat which was worn by the victim the night she was shot. His tests indicated that the firearm was discharged approximately six inches from the coat. Dr. Thomas Gilchrist, a forensic pathologist, testified that the bullet entered the back in the left shoulder, went from left to right and passed slightly downward from the back to the front. He further testified that although the bullet hit a rib, its course was not altered markedly by that encounter. He stated that the trajectory of the bullet from the left shoulder to the front of the chest was fairly straight. Finally, there was testimony, although confusing, from Weems that the gun in question was a single action revolver.
Weems contends that the shooting was an accident and that the jury could not have reasonably inferred intent from the evidence outlined above. We do not agree.
Although he may not have meant to shoot Christine, the jury could have reasonably concluded from the evidence that he intended to shoot another person whom he thought was in the bar that night. It had been made clear that Weems did not know the man who attacked him earlier and there was conflicting testimony about who was sitting with Christine. It is very likely that Weems thought Goodson was his attacker. Weems testified that the gun discharged when he realized it was still in his hand and he tried to put it away. The jury could rightfully view that testimony skeptically since it had been established that Weems had been in the bar for as long as fifteen minutes before the shot was fired. Additionally, the path of the bullet was from left to right, almost parallel to the ground. If Weems had been trying to put the barrel of the gun down his trousers, it is unlikely that a bullet discharged from the gun would travel a path through the victim’s body parallel to the ground. This improbability is amplified by the fact that the gun was discharged six inches or more from the body. It is also curious to note that the direction in which the gun was fired was the direction in which Sylvester Goodson, *170 the mystery man, was sitting. Finally, there is the testimony about the gun itself. Evidence was introduced which indicated that the revolver was of a single action type. Evidence indicated that before a single action revolver like this one can be discharged, the hammer must be pulled back and the trigger squeezed. This combination is unlikely to occur as a result of sticking the pistol down a pants leg. If Weems had cocked the hammer prior to the discharge, that in itself indicates that he intended to fire the gun.
The jury in this case had enough evidence before it from which intent could be inferred. The judgment of the lower court is, therefore, affirmed.
AFFIRMED.
All the Judges concur.