[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 582 
Appellant, Ronald J. Anderson, was indicted on May 4, 1984, by an indictment containing five counts. Count one charged appellant with the intentional murder of his wife, Shirley Anderson, in violation of § 13A-6-2(a)(1), Code of Alabama 1975. Counts two and three charged him with manslaughter in connection with the death of his wife, in violation of §13A-6-3(a)(1) and (a)(2). Count four charged him with the attempted murder of Albert E. Hamm, in violation of §13A-6-2(a)(1). Count five charged him with assault in the first degree in connection with the shooting of Hamm, in violation of § 13A-6-20(a)(1). The case was tried by a jury on September 10-12, 1985. Counts two and three were withdrawn on motion of the State, and the case was submitted to the jury on counts one, four, and five. The jury found appellant guilty of count one, not guilty of count four, and guilty of count five. Appellant was sentenced to ninety-nine years' imprisonment for the intentional murder of his wife and twenty years' imprisonment for assault in the first degree of Hamm, said sentences to run concurrently. On appeal he raises five issues. He does not question the sufficiency of the evidence, and we will set out only the facts which we deem necessary in understanding the issues we will address. We will only address issues three and four.
 I
Under issue three, appellant contends that, in regard to the trial court's oral instructions to the jury pertaining to the charge of intentional murder of Shirley Anderson, the trial court erred to reversal by failing to charge the jury on the lesser included offense of manslaughter. This issue is properly before us for review. Appellant made repeated oral requests and submitted written requested instructions, asking the trial court to charge on the lesser included offense of manslaughter. Even the prosecuting attorney joined appellant in requesting such a charge.[1]
A person accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment, when there is a reasonable theory from the evidence supporting his position. Chavers v. State, 361 So.2d 1106 (Ala. 1978); Fulghum v. State, 291 Ala. 71, 277 So.2d 886 (1973);Wiggins v. State, 491 So.2d 1046 (Ala.Cr.App. 1986); Wilkersonv. State, 486 So.2d 509 (Ala.Cr.App. 1986). A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury. Lami v. State,43 Ala. App. 108, 180 So.2d 279, cert. *Page 583 
denied, 278 Ala. 710, 180 So.2d 282 (1965). Every accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility. Ex parte Stork, 475 So.2d 623 (Ala. 1985); Chavers v. State, supra; Burns v. State, 229 Ala. 68,155 So. 561 (1934). Section 13A-1-9(b) provides, "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."
 "The 'safer' practice is to charge upon all degrees of homicide: '(I)t is much the safer rule to charge upon all the degrees of homicide included in the indictment, when a party is on trial for murder, unless it is perfectly clear to the judicial mind that there is no evidence tending to bring the offense within some particular degree.' Pierson v. State, 99 Ala. 148, 153, 13 So. 550 (1892), approved in Williams v. State, 251 Ala. 397, 399, 39 So.2d 37 (1948)."
Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App. 1983).
In relevant part, § 13A-6-3 provides as follows:
 "(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
The evidence in the instant case shows that appellant, his wife, and three children were visiting in the mobile home of Hamm; that appellant, his wife, and Hamm were consuming alcoholic beverages; that appellant and Hamm became embroiled in an argument; that appellant decided to go home and instructed his wife and children to accompany him; that his wife sat down beside Hamm and refused to go; that Hamm said that she could stay if she wanted to; and that appellant went home, taking two of the children with him. Appellant testified that, when his wife refused to accompany him, he visualized her standing nude at the foot of Hamm's bed. There was evidence of past marital difficulties between appellant and his wife. The evidence further shows that, upon arriving at his home, appellant got his shotgun, drove to a store and bought several boxes of shotgun shells containing buckshot, and returned to Hamm's mobile home, arriving shortly after dark. Upon arriving at the Hamm residence, he drove his automobile through the closed entrance gate, smashing it; got out of his automobile; and fired several rounds of buckshot into the mobile home, from a distance of about fifty feet. Over fifty of the buckshot struck or penetrated the mobile home. Several shot struck appellant's wife, killing her. Several of the shot struck Hamm, causing serious wounds. Appellant was arrested at the scene by the police. Appellant testified in his own behalf, claiming that he was having hallucinations and that, although remembering much of what happened, he had no control over himself and was acting as if in a dream. He denied seeing his wife when the shots were fired and claimed that he was only shooting at the mobile home.
After reviewing the evidence presented to the jury in the case, we conclude that the trial court committed error prejudicial to appellant in not instructing the jury on the lesser included offense of manslaughter. There was evidence, if believed by the jury, to support a reasonable theory that appellant's conduct in bringing about the victim's death was "reckless" and, therefore, a charge under § 13A-6-3(a)(1) would have been appropriate. There was also evidence, if believed by the jury, to support a reasonable theory that the death was caused due to a sudden heat of passion caused by provocation recognized by law and, hence, a charge under § 13A-6-3(a)(2) would have also been appropriate. We conclude that there was evidence, if believed, before the jury from which it *Page 584 
could have reasonably found appellant guilty of manslaughter.
We further conclude that the evidence of appellant's intoxication presented to the jury the question of whether appellant was capable of forming the specific intent necessary for a conviction of intentional murder. The trial court did charge the jury on intoxication as it related to the element of specific intent in the charge of murder. The evidence established that, prior to the shooting, appellant had been drinking alcoholic beverages most of the day; a partially filled whiskey bottle was found in his automobile immediately after the shooting; and when arrested, he had the odor of liquor about his person. The jury should have been charged on the lesser offense of manslaughter, for the evidence of appellant's intoxication presented the jury question of whether appellant was capable of forming the specific intent necessary for conviction of intentional murder. No matter how strongly the facts suggest that appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should be instructed on the lesser included offense of manslaughter when there is a reasonable theory from the evidence which would support that position. Silvey v. State, 485 So.2d 790 (Ala.Cr.App. 1986).
The attorney general suggests that if we find that there is a rational basis to support a manslaughter instruction, we should follow the procedure approved in Edwards v. State,452 So.2d 506 (Ala.Cr.App. 1983), aff'd, 452 So.2d 508 (Ala. 1984), and remand this case with instructions to the trial court to enter a judgment of guilty of manslaughter and sentence appellant accordingly. We do not agree with this suggestion. The instant case does not present a clear factual situation to which the doctrine of Edwards may be applied. Unlike Edwards, and other similar cases, there was sufficient evidence in the instant case, if believed, for the jury to have found appellant guilty of intentional murder. Hamm testified that the victim, upon hearing appellant's automobile crash through the gate, opened the door of the mobile home and was immediately shot in the doorway. This testimony, however, conflicts with the testimony of appellant's daughter, who was in the mobile home at the time. She testified that her mother was either on her way to the telephone or at the telephone at the time the shots were fired. Hamm's testimony in this regard also conflicts with a statement he made to the police shortly after the shooting. In addition, the demonstrative evidence does not conclusively show that the victim was shot in the doorway. The distinction here is that there was also evidence to support a theory or rational basis for a conviction of manslaughter, and appellant was, therefore, entitled to have the issue submitted to the jury for its consideration. See discussion of Edwards in Packv. State, 461 So.2d 910 (Ala.Cr.App. 1984). See also Weems v.State, 463 So.2d 168 (Ala.Cr.App.), reversed and remanded,463 So.2d 170 (Ala. 1984), on remand, 463 So.2d 173 (Ala.Cr.App. 1985).
 II
Appellant also contends that the trial judge committed reversible error by refusing to instruct the jury on his defense of mental disease or defect. Appellant had entered pleas of not guilty by reason of mental disease or defect along with not guilty pleas. This issue is also properly before us for review. Appellant requested such a charge orally and by timely written instructions. The prosecuting attorney joined appellant in requesting such instruction. The trial court, in refusing to give an insanity charge, advised the jury that there was no evidence to support an insanity plea and withdrew the insanity or mental disease or defect issue from the jury's consideration. Appellant argues that there was substantial evidence to support his plea and that the issue of insanity was a question for the jury.
In determining whether there is sufficient evidence of insanity to warrant the submission of that issue to the jury, the trial judge must decide if there is any evidence of legal insanity. That is, is there *Page 585 
any evidence that appellant, at the time of the crime, lacked the substantial capacity as a result of a mental disease or defect to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Young v.State, 428 So.2d 155 (Ala.Cr.App. 1982); Ala. Code (1975), §13A-3-1. In Young v. State, 428 So.2d at 161, we cited, with approval, the general rule found in 23A C.J.S. Criminal Law § 1130 (1961), as follows:
 "Where the defense of insanity is interposed, it first becomes a question of law whether the form of insanity attempted to be proved is a legal defense, or whether the facts proved would justify an inference of mental unsoundness; but, if the defense is allowed, unless the evidence thereon is legally insufficient or so conclusive as to warrant the issue being taken from the jury, or unless there is no real conflict in the evidence, the insanity of accused at the time of the crime is a question of fact to be determined by the jury, under proper instructions from the court. . . .
 "While the mere assertion of the defense of insanity is not, of itself, sufficient to entitle accused to go to the jury on such defense, only slight evidence of insanity at the time of the commission of the crime is required to raise the issue for submission to the jury; and if reasonable minds can reach different conclusions from the evidence, the question is for the jury. If, however, after giving the evidence the most favorable interpretation in favor of accused asserting the defense, an adverse conclusion must be reasonably reached, it is the duty of the court to rule on the issue as a matter of law and not permit the jury to speculate on the question."
In the instant case, appellant introduced records showing that he suffered from mental problems in 1966, while in the Marine Corps. Those records disclose that, at that time, he suffered from hallucinations and amnesia, which were apparently brought on by the shock of the death of his first child. He was discharged from the Marine Corps because of a mental disability. Testimony was offered that appellant had been given to prolonged and heavy drinking for several years, drinking every day, and consuming a fifth of whiskey and from two six-packs to a case of beer on weekends. Appellant testified that, on the night of the shooting, he experienced hallucinations, was in a daze, and had no control over his actions. In addition, Dr. Doyle Smith, who specializes in the effects of alcoholism and chemical dependency, or what he termed "addictiology," testified for appellant. Although he had not personally examined appellant, he answered certain hypothetical questions directed to him by appellant's counsel. The questions were designed to elicit his opinion of the mental condition on the date of the crime of a person with a medical history and behavior similar to those of appellant. Dr. Smith, in substance, concluded that, if the hypothetical person were in a certain withdrawal stage and the hallucinations were based on chemical dependency, the judgment of that person would be impaired, his behavior would be affected, and his ability to conform his conduct to the requirements of the law would be affected. Two officers, who observed appellant in the jail after the incident, testified that, for several days after the shooting, appellant acted as if he were in a daze and confused.
The military medical records introduced in evidence by appellant show the following:
 "After an adequate period of observation and treatment, the patient's case was reviewed by a conference of staff psychiatrists who agreed that the patient suffered from a mental illness of psychotic proportions. On 19 July 1966, the diagnosis was retained as Dissociative Reaction, # 3110, manifested by severe anxiety and hyperventilation with syncopal attacks."
After reviewing the evidence offered in support of the insanity plea, we are not willing to say that there was not some evidence that appellant, at the time of the crime, lacked the substantial capacity as a result of a mental disease or defect to appreciate the criminality of his conduct or to conform his conduct to the requirements *Page 586 
of law. The weight of the evidence of appellant's mental disorders in 1966 was for the jury to determine in conjunction with the following: The fact that appellant's later condition was similar to the psychotic condition he experienced while in the military service; Dr. Smith's testimony, which reinforced and explained this similarity; and the evidence of appellant's continued and excessive use of alcohol. We conclude that there was some evidence to support appellant's plea and, therefore, it was error for the trial court to refuse to submit the issue with proper instructions to the jury for its consideration.
Due to the above rulings, we deem it unnecessary to address the other issues raised by appellant. We do note, however, that the trial court refused to follow A.R. Crim.P.Temp. 14. This rule, inter alia, requires the trial court to advise counsel of its intended rulings on their requested written instructions prior to arguments. Needless to say, the rule should be followed.
For the above reasons, we reverse the judgment of conviction in this case and remand the case for a new trial.
REVERSED AND REMANDED.
All Judges concur.
[1] After the jury had been deliberating approximately thirty minutes, it propounded a written question to the trial court, as follows: "Is manslaughter an alternative to murder?" After fifteen more minutes of deliberation, the jury propounded a second question: "Can we be advised again as to the law on murder?" After ten more minutes, the jury propounded a third question, consisting of two parts: "Can we have a copy that you read as to the law on murder?" and "As to count one is there any alternative other than guilty or not guilty of murder?" The trial court adamantly refused to respond to any of the questions. *Page 902