Anthony Lorenzo Carey was indicted for murder, in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment." The trial judge sentenced the appellant to 30 years' imprisonment in the state penitentiary and ordered the appellant to pay restitution in the amount of $6,825 to the victim's family and $25 to the Alabama Crime Victims Compensation Fund.
This appellant and Patricia Carey were married in 1979. During 1985 and 1986, the couple separated on numerous occasions, but continued to try and reconcile their differences. In September of 1986, Patricia lived with the appellant at his home for two days. On the second day, she left her husband, and shortly thereafter she established her own residence in Bessemer, Alabama.
The appellant testified that they continued to discuss reconciling their differences during October of 1986. The week prior to the shooting the two looked at a home which the appellant stated he was interested in buying for them, so he, his wife, and children could once again live as a family.
Patricia Carey testified that on October 24, 1986, she was at home, along with Willie Green, Jr., the victim; Leroy Goins, a friend; and her five children. Around 10:30 or 11:00 p.m., the appellant came to her house. She met him at the door and, after talking with him for a minute, asked him to leave.
Patricia further testified that the appellant returned to her house at 12:30 a.m. and began banging on the front door. She and the victim were in the living room. The victim got up and went into the bedroom to put on his pants and boots. Patricia stated that she told the victim to ignore the appellant and that he would eventually leave. The victim, however, stated that he would go outside and speak with the appellant.
According to Patricia, the victim told the appellant to come back the next morning to talk to his wife, since everyone was in bed. The two men exchanged words, and then Patricia stated that she heard the victim say, "Man, don't pull that gun on me." (R. 21.) Patricia heard a gunshot and ran outside. She saw the victim grab his chest and fall to the ground.
Officer Joe Patera of the Bessemer Police Department was the first to arrive on the scene. He took several measurements, one of which was the distance from the chain link fence in front of the house, where the appellant was allegedly standing when he fired the shot, and the steps of the front porch, where the victim was standing when he was shot. The distance was ten feet and seven inches.
Dr. Bruce Alexander, an associate professor of pathology at the UAB Medical Center, performed an autopsy on the victim. He stated the victim was shot with a shotgun in the back at close range. He was of the opinion that a wound of this nature most likely caused instantaneous death.
The appellant testified that, during 1985 and 1986, he and his wife were experiencing marital difficulties. He stated that his wife would come to his home in Brighton, Alabama, on occasion to wash clothes or to visit. Sometimes she would bring the children, and, occasionally, she would stay overnight.
The appellant stated that he had four separate altercations with the victim during September and October of 1986. Two of these confrontations resulted in an exchange of fist blows, and, according to the appellant, the victim pulled a knife on him on one occasion.
The appellant stated that on October 24, 1986, he was working the 3-11 shift at Vulcan Material, Parkwood Quarry, in Bessemer, Alabama. He stated that the plant kept a shotgun on the premises. He removed the shotgun, which he claims was already loaded, and left work to go speak with his wife. She did not want to speak with him and asked him to leave.
The appellant stated he left her house and went to the Ninth Avenue Grill in *Page 1105 
Bessemer, Alabama, where he worked parttime as a disc jockey. He left there at 12:30 a.m., now October 25, 1986, and returned to his wife's home.
According to the appellant, he knocked on the door and the victim looked out and recognized him. The victim did not come out, so the appellant turned to go back to his truck. While the appellant was walking to his truck, the victim stepped out and asked the appellant what he wanted. The appellant stated he wanted to speak to his wife, and the victim told him that he had no business coming out at that time of the morning.
The appellant stated that he had the shotgun under a raincoat that he was wearing. He claimed that he took the gun with him for his own protection. He testified that he and the victim then exchanged words and the victim told the appellant that he would get him. According to the appellant, the victim started walking toward him. The appellant stated that he turned to get into his truck when he felt something strike him in the back of his head. This caused him to turn and fire at the victim who was standing on the bottom step of the porch. The appellant claims he was standing outside the gate when he fired the fatal shot.
 I
The appellant first contends that he was denied the right of a fair trial when the prosecutor used four of his six peremptory challenges to strike blacks from the petit jury venire.
The record reveals that the appellant properly made aBatson motion before the jury was empaneled and sworn. The trial court held, without hearing from the prosecutor, that the defendant failed to make a prima facie showing of racial discrimination and restated the reasons which were previously disclosed by the prosecutor during voir dire examination of three of these veniremen. One knew the defendant from work. Another had a nephew who had been prosecuted in that court for robbery. A third venireman lived in the vicinity of the place where the shooting occurred.
As for the prosecutor's striking of a fourth black, the prosecutor stated he struck this venireman because he was "difficult to communicate with." (R. 5.) While the reason as to this latter venireman, standing alone, might not be a sufficiently race neutral reason, we find that "other relevant circumstances" support the trial judge's finding. Currin v.State, 535 So.2d 221, 224 (Ala.Cr.App.), cert. denied,535 So.2d 225 (Ala. 1988).
The appellant, in making his motion, pointed out that five members of the jury panel were, in fact, blacks. This fact, along with the "great deference" given our trial judges in these matters, supports this trial judge's decision that the appellant failed to make a prima facie showing of racial discrimination under Batson v. Kentucky, 476 U.S. 79, 98,106 S.Ct. 1712, 1724, 90 L.Ed.2d 69 (1986), and Ex parte Branch,526 So.2d 609, 625 (Ala. 1987).
 II
Lastly, this appellant claims that the trial judge committed reversible error when he failed to instruct the jury on the lesser included offense of manslaughter.
The appellant filed a written request for a jury charge on manslaughter, which the trial judge signed as "denied." (Vol. II, R. 24.) Out of the hearing of the jury, the trial judge explained that he did not think the facts supported a charge of manslaughter. The relevant part of the record, in this regard, is set out as follows:
 "THE COURT: Also in regard to the question of provocation inferred to support a charge of manslaughter, the defendant has requested specifically a charge of manslaughter, which correctly states the charge of manslaughter. I will deny the charge again viewing the evidence in light most favorable to the defendant.
 "It's my recollection the defendant testified whatever had occurred the deceased had turned and was walking away, and was some distance away, and he had moved some direction — in the opposite *Page 1106 
direction at the time he turned and fired.
 "I find specifically there is nothing in that encounter that would arouse a reasonable person to the degree of indictment, for lack of a better word, caused by provocation. I find that does not exist. I will refuse your written requested charge for manslaughter and give you an exception.
"MR. FAWWAL: We except, Your Honor." (R. 251.)
After the jury was charged, the appellant objected to the trial judge's refusal to instruct on the crime of manslaughter. Again, the trial judge denied the request. (R. 263.)
Thereafter, the jury retired to deliberate. After approximately 30 minutes, however, the jury returned with two questions for the trial judge. One of those questions was in regard to the crime of manslaughter.[1] The trial judge stated as follows:
 "[I]t is the court's ruling in this case that the evidence does not support me giving you that charge. So that is not for your consideration at this time." (R. 263-64.)
Generally speaking, the better practice is to instruct on all lesser included offenses of homicide. Anderson v. State,507 So.2d 580, 583 (Ala.Cr.App. 1987). However,
 "[a] charge on a lesser included offense should not be given when there is no reasonable theory from the evidence to support such a proposition. When the evidence clearly shows the appellant is either guilty of the offense charged, or innocent, the charge on a lesser included offense is not necessary or proper. Daly v. State, 442 So.2d 143
(Ala.Crim.App. 1983); Phelps v. State, 435 So.2d 158 (Ala.Crim.App. 1983); Gwin v. State, 425 So.2d 500 (Ala.Crim.App. 1982), writ quashed, 425 So.2d 510 (Ala. 1983); Hopper v. Evans, 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); Cooper v. State, 364 So.2d 382 (Ala.Crim.App.), cert. denied, 364 So.2d 388 (Ala. 1978). . . . Further, a court may properly refuse to charge on lesser included offenses when it is 'clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offenses.' Phelps v. State, supra; Wesley v. State, supra; Chavers v. State, 361 So.2d 1106 (Ala. 1978)."
Perry v. State, 455 So.2d 999, 1002-03 (Ala.Cr.App. 1984). Seealso Anderson v. State, 507 So.2d 580, 582 (Ala.Cr.App. 1987);Pennell v. State, 429 So.2d 679, 681 (Ala.Cr.App. 1983). Briefly, for an accused to have an absolute right to a lesser included instruction, there must be a "rational basis" to support a conviction of the lesser included offense. Ala. Code, § 13A-1-9(b) (1975); Hill v. State, 485 So.2d 808, 809
(Ala.Cr.App. 1986).
For a jury to find that the appellant may have been guilty of manslaughter rather than murder, evidence would have had to have been introduced at trial which might have shown the appellant's conduct to have been "reckless" or triggered by "sufficient provocation." Ala. Code § 13A-6-3(a) (1975). If such evidence is introduced "however weak, insufficient, or doubtful in credibility," then the appellant is entitled to a jury charge on the lesser included offense. Ex parte Stork,475 So.2d 623 (Ala. 1985); Anderson, 507 So.2d at 583.
We find, as did the trial judge, that the evidence failed to support that this appellant's conduct was either "reckless" or motivated by sudden and "sufficient provocation." The appellant himself testified that he took the shotgun from his place of employment and that it was already loaded. He further testified that he had the shotgun under his raincoat when he went to his wife's home in the early morning hours of October 25, 1986. *Page 1107 
The appellant also testified that he and the victim exchanged words, but it is settled law that words, no matter how insulting, are never sufficient provocation. Perry v. State,453 So.2d 762, 765 (Ala.Cr.App. 1984), quoting Easley v. State,246 Ala. 359, 20 So.2d 519, 521 (1944). The appellant stated that he and the victim had had four prior confrontations, two of which resulted in blows, and on one occasion, the victim pulled a knife on this appellant. The facts in the record, however, failed to disclose that the victim was armed. In fact, the prosecution established the opposite. The testimony also revealed that the victim was shot in the back.
The appellant claimed that, when he turned to get into his truck, he was struck in the back of the head. As a result, he turned and fired. The appellant failed, however, to show any injury from such an alleged blow to the head or failed to produce the source of the blow.
The facts in this regard are again heavily weighted against this appellant. The appellant stated that he was standing outside the gate in front of the house. The victim was shot while standing on the bottom step of the front porch. The distance between the point at which the appellant stood when he fired the fatal shot and the point at which the victim stood was determined to be in excess of ten feet.
A case which is somewhat factually similar to the case at bar is Anderson v. State, 507 So.2d 580 (Ala.Cr.App. 1987). InAnderson, the appellant got into an argument with one of the victims. He started to leave, but his wife refused to go with him. The appellant went home, got his shotgun, and then went to a store to buy shotgun shells. He returned and started randomly shooting into the house, killing his wife and injuring another.
We reversed in Anderson because there was ample evidence that the appellant's conduct was "reckless." Furthermore, we held that a jury might find that he acted in the heat of passion, since the appellant stated that he was hallucinating that his wife was nude while with another man. Anderson,507 So.2d at 583.
In the cause sub judice, this appellant and his wife had been having marital difficulties for over a year when the shooting occurred. This appellant also knew that his wife had been seeing the victim and that the victim was staying in her house on occasion. This fact was substantiated by the appellant's testimony that he had moved his wife and family back to Alabama from Mississippi, where the victim and the appellant's wife lived for a short time. Furthermore, the appellant's wife testified that the victim was seated in a chair in her living room where she claims the appellant would have had to have seen him, on the appellant's first visit on October 24, 1986.
We, therefore, agree with the trial court that the evidence failed to support the appellant's claim that his conduct could have been viewed by a jury as reckless or motivated by sufficient provocation.
For the reasons stated, the decision of the trial court is due to be, and the same is hereby, affirmed.
AFFIRMED.
PATTERSON and McMILLAN, JJ., concur.
BOWEN and TAYLOR, JJ., concur in result only.
[1] The fact the jury requested a charge on manslaughter is not dispositive. A similar situation was discussed in Anderson v.State, 507 So.2d 580, 582 n. 1 (Ala.Cr.App. 1987). In Anderson, the trial judge failed on three occasions to address the petit jury's concern. In the present cause, the jury asked a similar question before returning a verdict. The trial judge told the jury just as he told the appellant when the manslaughter instruction was requested that he did not feel the facts supported such a charge. Such a decision is a matter for "judicial inquiry," and for the reasons set out in this opinion, we find no error.