[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1119 
The appellant, Andrew Bert Clark, was convicted of murder made capital because the murder occurred during the course of a robbery, see § 13A-5-40 (a)(2), Code of Alabama 1975. The jury, by a vote of 9 to 3, recommended that Clark be sentenced to life without the possibility of parole. The trial court, pursuant to § 13A-5-47 (e), overrode the jury's recommendation and sentenced Clark to death by electrocution.
The state's evidence tended to show that on April 20, 1994, Clark led officers to a field, where they found a shallow grave containing the body of Tom Posey. Dr. Alfredo Paredes, forensic pathologist, testified that he was present when the body was exhumed and that he performed the autopsy. He testified that the body was in fairly good condition because it had been buried in a shade wet area. The victim had been shot six times with a .22 caliber gun: three shots to the head and three shots to the back. It was Dr. Paredes' opinion that Posey died as a result of the three gunshots to the head, *Page 1120 
one to the right side of the head, one to the back of the head, and one above the left eye. Clark also took police to a culvert along County Road 87 behind the Dothan Airport, where they found a Ruger .22 caliber semi-automatic rifle.
The victim's father testified that he last saw Tom Posey on March 17 or March 18, 1994. The victim's father also testified that at the time of Posey's disappearance Clark was living with the victim.
Clark was apprehended in Bozeman, Montana, in April 1994, for violating a Henry County, Alabama, district judge's release order on an earlier unrelated offense. Officer Lynnwood Stokes of the Headland Police Department went to Montana to escort Clark back to Henry County. When Officer Stokes arrived at the police station in Montana he saw a 1992 Honda Civic automobile with a Henry County license tag parked outside the police station. The car was registered to Tom Posey. A search warrant was obtained to search the car. As a result of the search, numerous credit cards belonging to the victim were recovered as well as the victim's automatic teller machine (ATM) card. Police also discovered military discharge papers belonging to Clark. An investigation by Stokes revealed that the credit cards had been used in New York to purchase a video cassette recorder (VCR) camera and had been used at numerous hotels around the country. Clark had made a videotape of his travels from March to April, which showed him in New York City, Niagara Falls, Ontario, Salt Lake City, and Yellowstone National Park. Stokes also testified that Clark had purchased a Ruger .22 caliber semi-automatic rifle in Dothan, Alabama, on March 18, 1994.
Officer Stokes testified that when he was escorting Clark to Alabama, Clark inquired as to what he would be charged with when he returned. Stokes told him that he was charged with violating a release order. (The victim had signed the papers authorizing Clark's release on bond.) Clark then inquired about Posey's disappearance and asked if he thought something bad had happened to him. Clark then asked Stokes about the possible punishment for murder and whether he knew of anyone in the Bible who had been forgiven for committing murder.
When Stokes and Clark arrived at the Headland Police Department, Clark requested to speak with Stokes. Clark then told Stokes that "things" had been bothering him and that he would give the officers "what they wanted." Clark then got up from his chair and said that he could not sleep until he had led them to Posey's body. He then led them to where Posey was buried. Clark also showed officers where he had shot Posey. Shell casings were found at the spot where Clark had said he had shot Posey.
Stokes testified that Clark described to him the circumstances surrounding Posey's murder. Clark told Stokes that on March 19, at around 11:00 a.m., he and the victim were parked off Burdeshaw road in Posey's car. Posey was standing and facing away from the car, and Clark went to the trunk and retrieved a Ruger .22 caliber rifle and shot Posey in the back of the head. Posey then fell to the ground. Clark kept firing until Posey's body was motionless. Clark then approached the body and pointed the gun to the back of Posey's head and fired one more bullet into Posey's head near his ear.
Dwight Gamble, vice-president and security officer for the Headland National Bank, testified that the victim, Tom Posey, had a checking account and ATM card with Headland National Bank. He testified that transactions made at the ATM are video-taped. He said that from March 19, 1994, through March 23, 1994, several transactions on Posey's account were made at the ATM and that they were not made by Posey as evidenced by the videotape of the transactions. The first transaction, on March 19, was an inquiry as to the checking account balance. On this date, three attempts were made to withdraw money from Posey's account. The first unsuccessful attempt requested a withdrawal of $580, which was over the $500 daily withdrawal limit; the second request was for $400, which was over the $300 per transaction withdrawal limit; and the third attempt resulted in a withdrawal of $300. Another transaction at the ATM was made on March 23. At this time a balance inquiry was made and $300 was withdrawn from Posey's account. *Page 1121 
The videotape of the transactions was played to the jury.
Clark put on witnesses who testified that he had access to the victim's Honda car and that he customarily drove it to deliver pizzas. Clark's sister and mother also testified that he had been abused by his father and that his strict Mormon upbringing had had a drastic psychological effect on him.
 I
Clark first contends, that the trial court erred in receiving into evidence photographs of the victim's body. Specifically, the appellant objected to five 8" x 10" photographs that showed the condition of the victim's body at the time it was exhumed. Clark alleges that the photographs were irrelevant because he stipulated to the identification of the body and because there was no dispute as to the cause of death. He contends that the photographs were shown only to outrage and to inflame the jury.
This court, in Gaddy v. State, 698 So.2d 1100, 1148
(Ala.Cr.App. 1995.), discussed the receipt into evidence of photographs. The court stated:
 "Photographic evidence is admissible in a criminal prosecution if it tends to prove or disprove some disputed or material issue, to illustrate some relevant fact or evidence, or to corroborate or dispute other evidence in this case. Photographs that tend to shed light on, to strengthen, or to illustrate other testimony present may be admitted into evidence. . . . To be admissible, the photographic material must be true and accurate representation of the subject that it purports to represent. . . . The admission of such evidence lies within the sound discretion of the trial court. . . . Photographs illustrating crime scenes have been admitted into evidence, as have photographs of victims and their wounds. . . . Furthermore, photographs that show the external wounds of a deceased victim are admissible even though the evidence, is gruesome and cumulative and relates to undisputed matters. . . . Finally photographic evidence, if relevant, is admissible even if it has a tendency to inflame the mind of the jurors."
Photographs that are illustrative of the crime and corroborate the testimony of police on the scene are material and therefore admissible. Hill v. State, 516 So.2d 876 (Ala.Cr.App. 1987). Dr. Paredes and Lieutenant Stokes, who were both present when the body was exhumed, testified that the photographs of the body accurately and fairly depicted the scene and the condition of the victim's body when the body was discovered. These photographs of the victim were relevant and the trial court did not err in receiving them into evidence.
 "The state has the burden of proving that the victim was dead, and this photograph was direct evidence on that point. Perpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence."
Jenkins v. State, 627 So.2d 1034, 1045 (Ala.Cr.App. 1992), aff'd,627 So.2d 1054 (Ala. 1993), aff'd, cert. denied, 511 U.S. 1012,114 S.Ct. 1388, 128 L.Ed.2d 63 (1994).
 II
Clark next contends that the trial court erred in denying his challenge for cause as to a prospective juror. The record shows that the following occurred during voir dire:
 "THE COURT: . . . What do you know about the facts or what's the source of what you know?
"[Juror]: Newspaper, news, talk around town.
 "THE COURT: Concerning what you — have you talked with anybody close to the case, like any of the investigators or anything like that or maybe the sheriff or something?
 "[Juror]: I have talked with the sheriff, but not about any — not really any details.
 "THE COURT: Can you give us a little bit — well, first of all, do you think that your talking with the sheriff and any others or what you have seen in the paper, that that would affect your verdict? Or could you set aside and listen just to the facts of the case? *Page 1122 
 "[Juror]: I could set it aside and listen to the facts. But, I mean, I'm sure it has a bearing on me right now. . . .
 "MR. VALESKA [prosecutor]: You have no preconceived idea the Defendant is guilty in any way, do you?
 "[Juror]: No, sir, not by — except for what I have read or heard.
 "MR. VALESKA: And what you have read or heard, does that influence you as you sit there now in any way? Or is your mind completely open?
"[Juror]: It's open.
 "MR. VALESKA : And if I did not prove he's guilty, you could return a verdict of not guilty, correct?
[Juror]: Yes. . . .
 "MR. BLUMENFELD: [defense attorney]: Would the concern about getting your crops planted — do you think that would affect your ability to be a juror?
"[Juror]: Yes, sir, very much so.
"MR. BLUMENFELD: How would that be, sir?
 "[Juror]: Well, if I don't get a crop planted, I don't make a living. If I don't make a living, I'am in pretty bad shape. . . .
 "MR. BLUMENFELD: Well, if this was — I guess the concern I have and the concern we have is that both for the State and for the defense, we don't — we can't have or we shouldn't have a juror that says, `Well I may disagree with my fellow jurors and I may disagree very strongly, but I have got to get my crops done and I have got to look after my livelihood, which is important, so I will just go ahead and vote with the majority, so we can wind this thing up.' And that's —
 "[Juror]: I don't think that's going to — that would affect my decision. I wouldn't rush a decision based on that . . ."
Clark alleges that this juror had a fixed opinion as to his guilt and that he was prejudiced because the juror, a farmer, stated that he needed to get his crops planted. A prospective juror may be stuck for cause because of a statutory reason contained in § 12-16-150, Code of Alabama 1975, or on the grounds that he has a "fixed opinion as to guilt or innocence of the defendant which would bias his verdict." Kinder v. State,515 So.2d 55, 60 (Ala.Cr.App. 1986).
 "`The test to be applied is can the juror eliminate the influence of his scruples and render a verdict according to the evidence. Ordinarily a juror is not disqualified where it appears that he is willing to follow the instructions of law given by the trial court and is able to decide the case impartially according to the evidence notwithstanding his scruples. The determination of this question is based on the juror's answers and demeanor and is within the sound discretion of the trial judge.'"
515 So.2d at 60, quoting Barbee v. State,395 So.2d 1128, 1130-31 (Ala.Cr.App. 1981).
When a juror states that the juror can set aside his or her opinion and try the case fairly and impartially based on the evidence presented, it is not error for a trial judge to deny a challenge for cause. Howard v. State, 420 So.2d 828 (Ala.Cr.App. 1982).
The prospective juror's answers to questions from the court, the prosecutor, and the defense attorney showed that the juror could make an impartial decision based on the evidence presented during trial. The prospective juror stated affirmatively that neither his prior knowledge of the case nor his need to get his crops planted would affect his decision. The trial court did not err in denying Clark's challenge for cause.
 III
Clark further contends that the trial court erred in denying his motion to recuse himself from the case. Specifically, he contends that the trial court had presided over a guilty plea proceeding in another matter involving Clark in which the judge did not follow the sentence recommendation of the state and that the fact that he did not follow the sentence recommendation showed that the trial court u-as biased against him and could not conduct a fair trial in this case.
Canon 3C, Alabama Canons of Judicial Ethics, states:
 "(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might *Page 1123 
reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of' disputed evidentiary facts concerning the proceeding;
 "(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law serve during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it."
As this court stated in Lewis v. State,535 So.2d 228, 233 (Ala.Cr.App. 1988):
 "[Canon 3C, Alabama Canons of Judicial [Ethics] does not require disqualification `upon mere accusation of bias unsupported by substantial fact.' Taylor v. Taylor, 359 So.2d 395, 398 (Ala.Civ.App. 1978). See also Ross v. Luton, 456 So.2d 249 (Ala. 1984); Moreland v. State, 469 So.2d 1305
(Ala.Cr.App. 1985). Prejudice on the part of a judge should not be presumed. Ross v. Luton; Duncan v. Sherill, 341 So.2d 946 (Ala. 1977).
The United States Supreme Court in Aetna Life Ins. Co. v.Lavoie, 475 U.S. 813, 820, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823
(1986), stated: "`The law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.'" See also Adkins v. State, 600 So.2d 1054
(Ala.Cr.App 1990). The motion to recuse must be addressed to the judge challenged, and his decision will not be reviewed on appeal in the absence of clear evidence of bias." Slinker v. State,344 So.2d 1264, 1268 (Ala.Cr.App. 1977).
The fact that the trial court had previously presided over Clark's guilty plea proceeding in a prior burglary cases in which he did not follow the state's sentence recommendation does not by itself show bias. A judge is not bound to follow the sentence recommended by the state. Douglas v. State, 629 So.2d 770
(Ala.Cr.App. 1993). Clark has pointed to no incident during his capital trial that showed bias on the part of the trial court. The court did not err in denying Clark's motion that he recuse him-self.
 IV
Clark contends that the trial court erred in denying his request for a jury instruction on the lesser include offense of manslaughter.
"Generally, a trial court should instruct the jury on a lesser offense if there is a reasonable theory from the evidence to support that lesser offense." Jones v. State, 656 So.2d 414, 415
(Ala.Cr.App. 1994).
 "`When a greater and a lesser included offense are charged, the proper course is for the trial judge to instruct the jury to consider the lesser offense only if a reasonable doubt exists concerning the accused's guilt of the greater offense.'"
Parker v. State, 587 So.2d 1072, 1084 (Ala.Cr.App. 1991), quotingBragg v. State, 453 So.2d 756, 759 (Ala.Cr.App. 1984).
 "`For a jury to find that the appellant may have been guilty of manslaughter rather than murder, evidence would have had to have been introduced at trial which might have shown the appellant's conduct to have been reckless' or triggered by `sufficient provocation.' Ala. Code § 13A-6-3(a)(1975). If such evidence is introduced `however weak, insufficient, or doubtful in credibility' then the appellant is entitled to a jury charge on the lesser included offense.'"
Jones v. State, 656 So.2d 414, 415 (Ala.Cr.App. 1994), quotingCarey v. State, 560 So.2d 1103, 1106 (Ala.Cr.App. 1989).
There is no evidence in this record to support a conviction for manslaughter. Clark's actions were not reckless. He testified that he shot Posey in the back of the head while Posey had his back to him. He further testified that he continued firing shots into Posey's body until he stopped moving. Neither were Clark's actions committed in the heat of passion. He claims that specific words spoken by the victim triggered his actions. However, "[t]he well established rule in Alabama is that mere words, no matter how insulting or abusive, cannot reduce a *Page 1124 
killing to manslaughter." Biggs v. State, 411 So.2d 989, 992
(Ala.Cr.App. 1983).
The trial court did not err in denying Clark's request for jury instructions on the lesser included offense of manslaughter because there was no evidence to support a conviction on this offense.
 V
Clark further contends that there was not sufficient evidence to convict him of capital murder because, he says, there was no evidence presented that he could not be guilty of robbery as to Posey because he had free access to Posey's property.
 "The capital crime of the intentional killing of the victim during a robbery or an attempted robbery is a single offense beginning with the act of robbing or attempting to rob and culminating with the intentional killing of the victim. The The offense consists of two elements, robbing and intentionally killing. Davis v. State, 536 So.2d 110
(Ala.Cr.App. 1987) aff'd, 536 So.2d 118 (Ala. 1988), cert. denied, 490 U.S. 1028, 109 S.Ct. 1766, 104 L.Ed.2d 201 (1989); Magwood v. State, 494 So.2d 124 (Ala.Cr.App. 1985), aff'd, 494 So.2d 154
(Ala.) cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986).
 "`As the Alabama Supreme Court held in Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962),"the act that the victim was dead at the time the property was taken would not militate [against a finding] of robbery if the intervening time between the murder and the taking formed a continuous chain of events." Clements v. State, 370 So.2d 708, 713 (Ala.Cr.App. 1978), affirmed in pertinent part, 370 So.2d 723 (Ala. 1979); Clark v. State, 451 So.2d 368, 372 (Ala.Cr.App. 1984) To sustain any other position "would be tantamount to granting to would-be robbers a license to kill their victims prior to robbing them in the hope of avoiding prosecution under the capital felony statute." Thomas v. State, 460 So.2d 207, 212 (ala.Cr.App. 1983), affirmed, 460 So.2d 216 (Ala. 1984).
 "`Although a robbery committed as a "mere afterthought" and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, see Bufford v. State, [382 So.2d 1162
(Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala. 1980)]; O`Pry v. State, [642 S.W.2d 748 (Tex.Cr.App. 1981)], the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. Crowe v. State, 435 So.2d 1371, 1379
(Ala.Cr.App. 1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim's property and fled. Cobern v. State, 273 Ala. [at] 550, 142 So.2d [at] 871 . . . (1962). The defendant's intent to rob the victim can be inferred where "the intervening time, if any, between the killing and robbery was part of a continuous chain of events." Thomas v. State, 460 So.2d at 212. . . . See also Cobern v. State; Crowe v. State; Bufford v. State; Clements v. State.'
 "Hallford v. State, 548 So.2d 526, 534-35 (Ala.Cr.App.), aff'd, 548 So.2d 547 (Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989) (quoting Connolly v. State, 500 So.2d 57, 63 (Ala.Cr.App. 1985), aff'd, 500 So.2d 68 (Ala. 1986))."
Bush vs. State, 695 So.2d 70, 118-19 (Ala.Cr.App. 1995).
Whether Clark had the intent to permanently deprive Posey of his property was a question for the jury to resolve. There was more than sufficient evidence presented from which the jury could conclude that Clark committed premeditated murder and that he intended to deprive the victim of his property: he used the victim's credit cards, the victim's ATM card to access cash, and the victim's vehicle. There was sufficient evidence presented from which the jury could find the appellant guilty of murder made capital because it was committed during the course of a robbery. *Page 1125 
 IV
Last, as required by § 13A-5-53, Code of Alabama 1975, this Court must address the propriety of Clark's conviction and sentence to death. "In any case in which the death penalty is imposed, in addition to reviewing the case for any error involving the conviction, the Alabama Court of Criminal Appeals, subject to review by the Alabama Supreme Court, shall also review the propriety of the death sentence. § 13A-5-53(a).
The record reflects that Clark's sentence was not imposed under "the influence of passion, prejudice, or any other arbitrary factor." § 13A-5-53(b)(1).
The trial court found that the aggravating circumstances outweighed the mitigating circumstances and mandated a sentence to death. The trial court did not accept the jury's recommendation but chose to use its judicial override authority to sentence Clark to death. The judicial override in capital convictions has been held to be constitutional Harris v. Alabama,513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995); Spazianov. Flordia, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984);Ex parte, Jones, 456 So.2d 380 (Ala. 1984), denied,470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). The trial court found as aggravating circumstances that the murder was committed during a robbery and that the murder was especially heinous, atrocious, or cruel as compared to other capital offenses. §13A-5-49(4) and § 13A-5-49(8). the court stated in its sentence order:
 "When the Defendant killed Mr. Posey he shot him numerous times from his head down through the torso part of the body. The last shot was of a somewhat execution style being fired just behind the ear while the victim lay prostrate on the ground. At the trial, Dr. Alfredo Paredes, the forensic pathologist testified that people do not necessarily die from the first one or more gunshot wounds to the body even the head; that usually a person is still alive for a few minutes after the initial shots. In this case, the defendant continued to shoot the victim far beyond that necessary to incapacitate the victim and to eventually cause death. The pictures and clothing indicate much bleeding.
 "The small caliber of the rifle, and the large number of shots fired into the body would infer that the victim would have had to have suffered during the firing of numerous shots into the body. This kind of death . . ., pitiless and consciousness."
This court has held similar killings to be especially heinous, atrocious, or cruel when compared to other capital offenses.
 "`When a defendant deliberately shoots a victim in the head in a calculated fashion, after the victim has already been rendered helpless by [prior] gunshots . . ., such "extremely wicked or shockingly evil" action may be characterized as especially heinous, atrocious, or cruel.' Lawhorn v. State, 581 So.2d 1159 (Ala.Crim.App. 1990), aff'd, 581 So.2d 1179 (Ala. 1991), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991)."
Rieber v. State, 663 So.2d 985, 993 (Ala.Cr.App. 1994), aff'd,663 So.2d 999 (Ala.), cert. denied, 516 U.S. 995, 116 S.Ct. 531,133 L.Ed.2d 437 (1995).
The court found as a statutory mitigating circumstance that Clark did not have a significant history of prior criminal activity. § 13A-5-51(1). The court further found the existence of a certain nonstatutory mitigating circumstance. The court Stated:
 "The Defendant experienced harassment or abuse from his father during summer visitation in regard to the Defendant's Mormon up-bringing while in the custody of his Mother during the year. This situation led to a serve animosity between father and son. The Court does not find such as a major factor in the case.
 "The Court finds as a nonstatutory mitigating circumstance that the Defendant was cooperative with law enforcement officers at the time of his arrest, the investigation of the case, and while incarcerated in the Henry County jail."
In finding that the aggravating circumstances outweighed the mitigating circumstances, the trial court stated: *Page 1126 
 "The Court observes that the Defendant was very familiar with the finances, accounts, and credit cards of the victim. The Defendant purchased a semi-automatic rifle with a 30-round clip on one day and then killed the victim the next day in an isolated area by shooting him numerous times in the head and body with one final shot behind the ear after the victim fell. This homicide appears to have been planned and carried out in a cold-blooded manner toward the elimination of the victim and the taking and use of his property."
We agree with the court's findings in the present case.
As required by § 13A-5-53 (b)(2), this Court must also independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's sentence to death. After independently weighing the aggravating and the mitigating circumstances presented in this case, this court is convinced that Clark's sentence to death is appropriate.
Section 13A-5-53(b)(3) requires that this court compare the sentence in this case to other sentences imposed in similar cases to determine whether the sentence is excessive or disproportionate. Clark's sentence is neither. Dobyne v. State,672 So.2d 1319 (Ala.Cr.App.), on remand, 672 So.2d 1353
(Ala.Cr.App. 1994), aff'd, 672 So.2d 1354 (Ala. 1995); Brownleev. State, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989).
We have searched the record for any error that may have adversely affected Clark's substantial rights and have found none. Rule 45A, Ala.R.App.P.
Clark's conviction and sentence to death by electrocution are due to be, and are here-by, affirmed.
AFFIRMED.
ALL THE JUDGES CONCUR.